TUNG-SOL ELECTRIC INC., APPELLANT, v. BOARD OF RE-
VIEW, DIVISION OF EMPLOYMENT SECURITY, DE-
PARTMENT OF LABOR AND INDUSTRY, STATE OF
NEW JERSEY, AND GENEVIEVE COSME, RESPOND-
ENTS.

Superior Court of New Jersey
Appellate Division

Argued May 9, 1955—Decided May 23, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

Mr. *James A. Hession* argued the cause for Tung-Sol Electric Inc., appellant (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

Mr. *Clarence F. McGovern* argued the cause for the Board of Review (*Mr. Grover C. Richman,* Attorney-General).

Mr. *William Rossmoore* argued the cause for Genevieve Cosme.

The opinion of the court was delivered by

CLAPP, S. J. A. D. The reargument of this case presents two questions not dealt with in our earlier opinion, 34 *N. J. Super.* 349 (*App. Div.* 1955): first, whether the claimant here rendered herself ineligible for unemployment compensation because she limited her availability for work (*N. J. S. A.* 43:21–4(c)) to a second shift, namely, from 3:30 P. M. until midnight; and, second, assuming nevertheless that she was eligible when first discharged, must she, in order to entitle herself to continuing benefits after being unemployed for some months, make herself available for work on other shifts.

The claimant, Mrs. Genevieve Cosme, had worked for appellant, Tung-Sol Electric Inc. from 5:45 to 11:45 P. M. for a year and a half prior to November 23, 1953 when she was laid off. She then made herself "available for work" (*N. J. S. A.* 43:21–4(c)) on the entire eight and one-half hours of the second shift, but refused to extend her availability further, claiming she had to care for her three young (they were so described in the Appeal Tribunal's findings) children during the day. It is important to note that at the times in question and within the applicable area, there was (Tung-Sol so agreed on the argument) a labor market for female workers, such as claimant, seeking employment on the full-time second shift. We pass over (since Tung-Sol in its brief makes no point of the matter) that at one time claimant said she wanted work "within one bus ride and not more than ½ hour ride from home," and would not take less than $1.20 an hour.

The Board of Review held claimant was entitled to benefits from December 15, 1953—when the Director had, by order applicable here, dispensed with the requirement of "actively seeking work" (*N. J. S. A.* 43:21–4(c))—to May 17, 1954, when Tung-Sol took her back in its employ on the full-time second shift. Tung-Sol appeals. It failed to appear before the Board, and we might on that account perhaps dismiss its appeal. *Walter v. Keuthe,* 98 *N. J. L.* 823 (*E. &*

*A.* 1923); *cf. N. J. S. A.* 43:21–6(*h*). However, we go on to the merits.

The question first stated—whether claimant may limit her availability to the second shift—turns on the significance to be put upon the statutory words (*N. J. S. A.* 43:21–4):

"An unemployed individual shall be eligible to receive benefits with respect to any week only if it appears that:

\*       \*       \*       \*       \*       \*       \*       \*

(c) He \* \* \* is available for work \* \* \*."

It is held in most jurisdictions which have dealt with the matter (or with analogous problems) that a female worker may not limit her availability to a certain shift or period of time because she must care for her children at other times. *Leclerc v. Administrator, Unemployment Compensation Act,* 137 *Conn.* 438, 78 *A.* 2d 550 (*Sup. Ct. Err.* 1951); *Ford Motor Co. v. Appeal Board of Michigan Unemployment Compensation Comm.,* 316 *Mich.* 468, 25 *N. W.* 2d 586 (*Sup. Ct.* 1947); *Swanson v. Minneapolis-Honeywell Regulator Co.,* 240 *Minn.* 449, 61 *N. W.* 2d 526 (*Sup. Ct.* 1953); *Haynes v. Unemployment Compensation Comm.,* 353 *Mo.* 540, 183 *S. W.* 2d 77 (*Sup. Ct.* 1944); *Jacobs v. Office of Unemployment Compensation and Placement,* 27 *Wash.* 2d 641, 179 *P.* 2d 707 (*Sup. Ct.* 1947). *Cf. Robinson v. Maryland Employment Security Board,* 202 *Md.* 515, 97 *A.* 2d 300 (*Ct. App.* 1953); *Unemployment Compensation Comm. v. Tomko,* 192 *Va.* 463, 65 *S. E.* 2d 524 (*Sup. Ct.* 1951).

There are authorities to the contrary. *Mee's Bakery v. Unemployment Compensation Board of Review,* 162 *Pa. Super.* 183, 56 *A.* 2d 386 (*Super. Ct.* 1948); *Erie Resistor Corp. v. Unemployment Compensation Board of Review,* 172 *Pa. Super.* 430, 94 *A.* 2d 367 (*Super. Ct.* 1953); *cf. Swenson v. Michigan Employment Security Comm.,* 340 *Mich.* 430, 65 *N. W.* 2d 709 (*Sup. Ct.* 1954); *Roukey v. Riley,* 96 *N. H.* 351, 77 *A.* 2d 30, 32 (*Sup. Ct.* 1950); *Leonard v. Unemployment Compensation Board of Review,* 148 *Ohio St.* 419, 75 *N. E.* 2d 567 (*Sup. Ct.* 1947) (*cf. Beall v. Bureau of Unemployment Compensation,* 101 *N. E.*

2d 780 (*Ohio App.* 1951)); *Shay v. Unemployment Compensation Board of Review,* 177 Pa. Super. 294, 111 A. 2d 174 (*Super. Ct.* 1955). In accord, see *Altman and Lewis, Limited Availability For Shift Employment,* 22 No. Car. L. Rev. 189 (1944), 28 *Minn. L. Rev.* 387 (1944); *Menard,* 55 *Yale L. J.* 134, 147 (1945); Note, 10 *Ohio L. J.* 232, 233 (1949). Also see Altman's book, *Availability for Work* 229–233, 180–183 (1950).

In New Jersey we have an unusual (Altman's book, 183) statute, *N. J. S. A.* 43:21–20.1, adopted in 1952, allowing compensation under certain conditions to one who limits his availability to *less than* full-time work. This statute, as appears from the statement appended when it was introduced in the Legislature, was proposed because the Board of Review had "consistently" held the words "available for work" (*N. J. S. A.* 43:21–4(*c*)) to mean "'available for (full-time) work.'" Moreover, in cases quite like this one, the Board had held a claimant may, if she has good cause and a labor market exists, limit her availability to a single full-time shift. Case No. BR–573 (Jan. 3, 1940); No. BR–5219 (June 19, 1944); No. BR–6175 (Feb. 18, 1946).

██ But whether or not the draftsman of the statute had the present situation in view, it is incumbent upon us, where legislative words fairly accommodate themselves to the purpose, so to read statutes as to fit them together into an harmonious scheme. It would be, we think, rather incongruous to hold that a claimant who for good cause makes herself available for work only for six hours a day may entitle herself to compensation under one provision of the act (*N. J. S. A.* 43:21–20.1), while one who for like cause makes herself available only for an eight and a half hour shift fails to meet a correlative provision (*N. J. S. A.* 43:21–4(*c*)). The situation is pointed up by the very case at hand: the claimant held herself available for an eight and a half hour second shift though during her base year she had worked only six hours on that shift. With this statutory background in mind, we conclude the claimant

here did not render herself ineligible because she limited her availability to a single shift.

To be sure a claimant must have good cause for so doing. As our cases have held, the term "available for work" signifies that one is willing, ready and able to accept suitable work which he does not have good cause to refuse. *Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.* 447, 457 (1953). The concepts of suitability (*Freeman,* 55 *Yale L. J.* 123, 125 *et seq.; Menard,* 55 *Yale L. J.* 134; 10 *Ohio L. J.* 232; *N. J. S. A.* 43:21–5(*c*)(1)) and good cause take account of a variety of factors ranging from those voluntarily but reasonably imposed to those which are the product of compulsive pressures upon the claimant, such as the pressures of " 'family obligations,' " which put the matter well beyond the claimant's mere wish. *Cf. Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.*, at 464, construing *N. J. S. A.* 43:21–5(*a*). In general see Altman's book, 106.

There is little in the evidence or the findings—except by way of a bare conclusion—as to the pressures brought on this claimant by her family. But Tung-Sol's argument does not attack any insufficiency in this regard; its contention seems to be that the caring for children, whatever the circumstances, is a matter of mere personal convenience and, as such, does not amount to good cause. With this we do not agree.

We might add, however, out of precaution that we have given no consideration to the question as to what circumstances will warrant a rejection of day work on the part of a female claimant with children. See *Menard,* 55 *Yale L. J.*, at 147, *n.* 34.

The second question comes out in the brief only *en passant* in the course of the discussion of the first question. The argument is that assuming claimant, when she was first discharged, could properly limit her availability to the second shift only, nevertheless after a reasonable time she must either adjust her obligation to her children so as to make herself available for work for a greater part of the working day, or else forfeit her right to benefits.

Tung-Sol, though it does not state its position precisely, perhaps adopts the view of the agency's Appeal Tribunal. That Tribunal held that within the period from November 23, 1953, when claimant was discharged, to April 5, 1954 (four and one-half months) she had had a reasonable time to explore the labor market with respect to second shift jobs, and that benefits should be disallowed after April 5, because she had thereafter restricted her availability to the second shift. On May 17, 1954, four days after the hearing before the Tribunal, she secured work from Tung-Sol on the second shift. The question then is whether it was unreasonable for her to continue to limit her availability to the second shift for the period from April 5 to May 17. The Board of Review reversed the Tribunal, holding this not unreasonable under the circumstances.

We may observe—though we need not pass upon it—that Altman argues (see his book, 111; see further *Id.* 87, 165 *n.* 25, 169) that any requirement that a claimant must extend the field of his availability as the period of his unemployment lengthens, has no direct relationship with the concept of availability for work. His view is that the requirement has to do rather with the disqualification which, as stated in our statute, *N. J. S. A.* 43:21–5(*c*) (dealing expressly with "length of unemployment and prospects for securing * * * work"), is operative for a three-week period if there is a failure without good cause to accept an *offer* of suitable work. *Cf. Broadway v. Bolar,* 33 *Ala. App.* 57, 29 *So.* 2d 687, 692 (*Ct. App.* 1947); *Berthiaume v. Christgau,* 218 *Minn.* 65, 15 *N. W.* 2d 115 (*Sup. Ct.* 1944); *Hallahan v. Riley,* 94 *N. H.* 48, 45 *A.* 2d 886 (*Sup. Ct.* 1946); 25 *Rocky Mt. L. Rev.* 180, 208 (1953). However it will be noted, we have held that the requirement stated inheres in the provision (dispensed with here on December 15, 1953) calling for an active search for work. *Guidice v. Board of Review of Division of Employment Security,* 14 *N. J. Super.* 335 (*App. Div.* 1951); *N. J. S. A.* 43:21–4(*c*).

But we leave that aside in order to get to the contentions pressed here. It cannot be maintained that a claimant, who is absolutely compelled to either continue to limit her availability to the second shift after the lapse of a reasonable time or suffer her young children to fend for themselves, must on that account lose her right to compensation. This would be a requirement of a very different sort from one calling upon a claimant, as his unemployment lengthens, to lower his sights as to the work he will accept—that is, as to amount of salary, type of job, length of commutation to work, etc. Perhaps, however, claimant here, as time of unemployment lengthens and work prospects on the second shift grow dimmer, must endeavor in some situations to make more expensive arrangements for the care of her children during the day, or make some other adjustment.

But Tung-Sol does not address itself to such matters as these. Its argument does not go to the insufficiency of the proofs or the findings which would here lead only to a remand. Indeed, not having troubled itself to put in an appearance below, it could hardly ask for a remand now (as to burden of proof, see *Krauss v. A. & M. Karagheusian, Inc.*, 13 *N. J.*, at 456, *supra;* Altman's book, 103).

Tung-Sol's contention comes down to this: claimants limiting their availability to a single shift—

"*must*, after a reasonable time, so adjust their domestic obligations as to be available for employment for a greater part of the working day."

We cannot say that in every case such claimants must as a matter of law so extend their availability after the lapse of a reasonable time—nor (see *Menard, 55 Yale L. J.* 134, 142) can we say as a matter of law that a reasonable time had elapsed here.

Affirmed.