262 A.2d 831.

David Mathews *vs.* Arctic Tire, Inc.

MARCH 10, 1970.

Present: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a receivership proceeding. It is before us on the receiver's appeal from an order of the Superior Court that one of the respondent's creditors has a valid and perfected security interest in the respondent's inventory and all accounts receivable arising from the sale of such inventory.

On January 13, 1964, respondent, through its duly authorized officer, executed a security agreement to secure the payment of all past and future obligations due Uniroyal, Inc. The agreement stated that the secured party was to have a security interest in all of respondent's inventory and accounts receivable. Later, on January 27, 1964, Uniroyal filed a properly executed financing statement in the Secretary of State's office. The statement described the collateral as "All Inventory." The appropriate square on the financing statement was marked so as to indicate that Uniroyal was also claiming a security interest in the proceeds of the collateral.

The controlling issue in this case is whether the proper filing of a financial statement covering inventory and proceeds is sufficient to perfect a security interest in the accounts which result from the sale of the inventory. Our answer is that it does.

The definition of proceeds as that term is used in G. L. 1956, Title 6A, the Uniform Commercial Code, is found in §6A-9-306(1), which reads as follows:

> " 'Proceeds' includes whatever is received when collateral or proceeds is sold, exchanged, collected or otherwise disposed of. The term also includes the account arising when the right to payment is earned under a contract right. Money, checks and the like are 'cash proceeds.' All other proceeds are 'non-cash proceeds.' "

The receiver, in contending that the term "proceeds" as found in the code does not encompass an account resulting from the sale of items of inventory, lays particular stress

on two words found in §6A-9-306. They are *"received"* and *"arising."* The receiver claims that under the code "proceeds" consists solely of what is *received* from a sale or other disposition of the collateral. The receiver points out that when an item is sold for cash, the seller receives cash or a check. However, when the sale is on credit, he alleges that the seller receives nothing although, he says, an account does *arise* in his favor. The receiver states that the difference between what is received and what arises is obvious and, therefore, an account resulting from an inventory sale not being *received* by the seller cannot be classified as proceeds under the code.

The receiver's theory as to what constitutes "proceeds" under Article 9 is completely erroneous. The flaw in his reasoning is that he completely ignores the clear distinction between the statutory definitions of an "account" and a "contract right." The word "arising" as it appears in §6A-9-306(1) is used in that portion of the section which speaks of a contract right. In the case at bar we are concerned with an account—not a contract right. There is a difference between an account and a contract right. Section 6A-9-106 defines an "account" as a right to payment for goods sold or leased or services rendered which has been earned by performance, and a "contract right" as a right to payment *to be earned* by future performance under an existing contract. If the right to payment has been earned, it does not matter whether the payment is due immediately or in the future; this right under the code is still an account. Once a contract covering goods sold or leased or services rendered has been performed, the contract right becomes an account. A typical example of a contract right being used as collateral may be found in those instances where a manufacturer has entered into a contract to supply a customer with material and subsequent thereto receives a bank loan. The bank in seeking to secure payment of

the loan would file a financing statement in which it would list the contract as being the collateral. The "proceeds" of the described collateral would be the account that would arise when the right to payment is earned under the contract. See Davenport and Henson, *Secured Transactions* II, chap. 6, at 96-97.

The concept as to what constitutes proceeds under the Uniform Commercial Code is particularly crucial in the case of inventory financing where the secured party of necessity authorizes the debtor to sell the collateral. The code sets forth in Article 9 a comprehensive and uniform scheme which provides for the safeguarding of a security interest and a concomitant ease of inventory financing in that the debtor can carry on his business of selling goods while the secured party's interest in the proceeds of the sale remains protected. In order that a creditor may have a continuing security interest in the proceeds of a sale or other disposition of the collateral listed in a financing statement, the draftsmen of the code have used broad and all encompassing language in describing such proceeds. Proceeds, the code states, is whatever is received when the collateral (in this case the inventory) is sold. Accordingly, when respondent sold any of the collateral, it received cash or a right to payment at a future date—an account. Thus it is clear that accounts resulting from any sale of respondent's inventory are indeed proceeds within the definition of §6A-9-306(1).

When inventory[1] is delivered to a debtor, the secured party gives an implied, if not expressed, authorization that the collateral may be sold. By authorizing the sale, the secured party surrenders any claim in the inventory to one who makes a purchase from a debtor in the ordinary course of business. §6A-9-307(1). Accordingly, it is not only

---

[1]Section 6A-9-109 (4) defines inventory as goods held for sale or lease or to be furnished under a contract of service.

practical but necessary that the secured party, in order to assure himself of some security for the money owed him, have a continuing interest in "whatever is received" from the sale of the inventory. If we were to adopt the receiver's position that proceeds are limited to cash, the unimpeded flow of goods which is so vital to the success of a retailer would soon be shut off. We might add, that in the credit-card economy of today where the public is being constantly besieged to "charge now—pay later," accounts receivable unquestionably form a large part of present-day proceeds and constitute a most attractive type of collateral. See *The Priority Conflict Between A Purchase Money Security Interest And A Prior Security Interest in Future Accounts Receivable,* 22 Vand. L. Rev. 1157. Coogan in his treatise on the code makes it clear that accounts produced by the sale of the collateral are "proceeds." See 1 Coogan-Hogan-Vagts, *Secured Transactions under the Uniform Commercial Code,* §6.07[2], at 521. Finally, if the receiver's view of proceeds was correct, there would be no necessity for the legislature to set up in §6A-9-306(1) two classes of proceeds—"cash proceeds" and "non-cash proceeds."

The trial justice was correct when he ruled that, when respondent's inventory is sold, Uniroyal shall have a perfected security interest in any account arising from such sale.

Having ruled that the proceeds of an inventory include those accounts resulting from the sale of the inventory, it follows that the term "proceeds" was sufficient to put everyone on notice as to the extent of Uniroyal's claim. In *South County Sand & Gravel Co.* v. *Bituminous Pavers Co.,* 106 R. I. 178, 256 A.2d 514, this court pointed out that §6A-9-402 provides for a so-called "notice filing." The financing statement, we said, need *not* provide an interested person with *all* the information relative to the secured transaction but need only tell him that such a transaction

696

has occurred and that the particulars thereof can be obtained from the secured party as provided in §6A-9-208. Section 6A-9-203(1)(b) states that "In describing collateral, the word 'proceeds' is sufficient without further description to cover proceeds of any character." The financing statements filed by Uniroyal were sufficient to put all interested parties on notice that it was asserting a claim to respondent's accounts receivable.

In his brief and at oral argument, the receiver took a position that, even if the respondent's accounts are proceeds of the inventory, Uniroyal, by its filing of Form UCC-3 on June 23, 1966, released any right it had to the proceeds of the sale of the collateral. Form UCC-3 was filed by Uniroyal to show that the respondent had moved from Providence, Rhode Island. Since we shall not consider this phase of the receiver's appeal, no purpose will be gained in setting forth the receiver's reasoning in this regard. In *Hill* v. *M. S. Alper & Son, Inc.,* 106 R. I. 38, 256 A.2d 10, we observed that it is a basic proposition of receivership law that a receiver does not have an absolute right to appeal and that generally he will not be allowed to appeal an order from a court whose instrumentality he is and by whose creation he exists, except upon the court's express permission and direction. Here the receiver's permission to appeal was specifically limited by the trial justice to the bringing before us the issue of whether the proceeds of the inventory sale included the subsequent accounts which arose from the sale. There was no authorization that he relitigate[2] the effect of the filing of Form UCC-3. In such circumstances we shall not pass upon this last issue.

[2]The Superior Court rejected the receiver's contention that the filing of this form barred Uniroyal from claiming any interest in the disputed accounts.

The receiver's appeal is denied and dismissed.

*Winograd, Winograd & Marcus, Richard W. Zacks,* for plaintiff-appellee.

*Samuel A. Olevson,* for defendant-appellant.