**342 A.2d 918.**

IN THE MATTER OF THE SHEPARD CO.

JULY 30, 1975.

PRESENT: Roberts, C. J., Paolino, Kelleher and Doris, JJ.

Doris, J. The United States District Court for the District of Rhode Island, acting pursuant to Sup. Ct. R. 6, has certified to this court a question of law, together with a statement of the facts relevant to the controversy in which the question arose. The present action was initiated when both General Electric Credit Corporation (hereinafter GECC) and James Talcott, Inc. (hereinafter Talcott) filed reclamation petitions in the United States District Court for the District of Rhode Island alleging that they hold valid and perfected security interests in certain assets of the bankrupt corporation, The Shepard Company.

On or about September 8, 1972, The Shepard Company, a Rhode Island corporation, granted a security interest in certain of its assets to Talcott, and a financing statement was accepted for filing by the Rhode Island Secretary of State. On or about June 25, 1973, The Shepard Company granted another security interest in certain of its assets to GECC. Again the Rhode Island Secretary of State accepted a financing statement for filing. On September 24, 1973, The Shepard Company was adjudicated a bankrupt in the United States District Court for the District of Rhode Island. A Trustee in Bankruptcy was thereafter appointed.

The question certified to this court involves the legal

292

adequacy of the financing statements offered for filing by GECC and Talcott. The question reads as follows:

"Is a financing statement under the Rhode Island Uniform Commercial Code, accepted for filing and in fact filed with the Secretary of State upon payment of the statutory fee, G. L. 1956, Title 6A, as amended, sufficient to perfect a security interest, if:

a. It is signed by the debtor and the secured party;

b. Gives an address of the secured party from which information concerning the security interest may be obtained;

c. Gives a mailing address of the debtor;

d. Contains a statement indicating the types of collateral, which collateral in fact is not consumer goods; and

e. Does not cover either crops or goods which are or are to become fixtures; but

f. Does not contain a statement indicating whether the collateral is consumer goods having an aggregate original purchase price of not less than three hundred dollars ($300), excluding interest, insurance and other finance charges?"

The initial issue for our consideration is whether Sup. Ct. R. 6 permits certification of questions of law by a bankruptcy judge. Sup. Ct. R. 6 provides that "this court may answer questions of law certified to it by * * * a United States District Court * * *." Under the provisions of the Bankruptcy Act, every district court is a court of bankruptcy when its jurisdiction is properly invoked, 11 U.S.C.A. §§1 (10), 11 (1966). As a court of bankruptcy, it is granted broad legal and equitable jurisdiction to hear and decide questions involving significant property rights. 11 U.S.C.A. §11 (1966). Even a referee is a judicial officer vested with the power to exercise the jurisdiction conferred on the courts of bankruptcy. 11 U.S.C.A. §§64, 66 (1968); Bankruptcy Rule 901(7). In this situation, we see no reason to distinguish a district court and its officers when exercising bankruptcy jurisdiction from

a district court and its officers when exercising more general functions. We conclude, therefore, that the terms of Sup. Ct. R. 6 encompass a question of law certified by a bankruptcy judge.

The terms of the certified question call into question the meaning and legal effect of G. L. 1956 (1969 Reenactment) §6A-9-402. The relevant portions of this statute read as follows:

> "6A-9-402. *Formal requisites of financing statement —Amendments.—*(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral. A financing statement may be filed before a security agreement is made or a security interest otherwise attaches. When the financing statement covers crops growing or to be grown or goods which are or are to become fixtures, the statement must also contain a description of the real estate concerned and the name of the record owner thereof. A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties.
>
> * * *
>
> (5) For purposes of determining whether a financing statement or security agreement shall be received for filing (see §6A-9-401(1)(c)) said financing statement or security agreement shall contain a statement indicating whether the collateral is consumer goods having an aggregate original purchase price of not less than three hundred dollars ($300) excluding interest, insurance and other finance charges, but the omission of such statement shall not affect the validity of the security interest described therein."

Where the language of a statute is free of ambiguity and conveys a definite and sensible meaning not contradicting an evident legislative purpose, this court must

give literal effect to the terms of the statute. *Reardon* v. *Hall,* 104 R. I. 591, 247 A.2d 900 (1968). However, as the arguments of the parties indicate, not only are several terms of §6A-9-402 ambiguous, but the overall meaning and legal effect of the statute, and in particular of subsection 5, are far from obvious. In this situation, this court has the duty of attempting to ascertain the legislative intention by a consideration of the statute in its entirety, interpreting the language used therein in light of the overall nature and purpose of the enactment. *Mason* v. *Bowerman Bros., Inc.,* 95 R. I. 425, 187 A.2d 772 (1963); *Zannelli* v. *Di Sandro,* 84 R. I. 76, 121 A.2d 652 (1956).

The petitioners in this case allege that they hold valid and perfected security interests in certain assets of the bankrupt. With various exceptions not relevant here, a financing statement must be filed to perfect a security interest. §6A-9-302(1). Part 4 of Article 9 of the Rhode Island Uniform Commercial Code covers the filing of financing statements. Section 6A-9-401 governs the place of filing, here the office of the Secretary of State of Rhode Island, and in a proviso unique to the Rhode Island Uniform Commercial Code, it also prohibits the receipt for filing of any financing statement where the collateral is consumer goods under the value of $300. Section 6A-9-402 sets out the formal requisites of a financing statement, states what constitutes a sufficient financial statement, and in a subsection found only in the Rhode Island Uniform Commercial Code, requires the inclusion of a statement indicating whether the collateral is consumer goods under the cost of $300.

The terms of the certified question make it clear that petitioners not only filed their financing statements within the meaning of §6A-9-403(1), but also filed them in the proper place under §6A-9-401(1)(c). Nor is there any

question but that the financing statements satisfied the formal requisites of a financing statement set forth in §6A-9-402(1). The issue is whether the instant financing statements complied with the requirements of §6A-9-402 (5), and if not, what is the legal effect of this noncompliance.

Section 6A-9-402(5) states that a financing statement "* * * shall contain a statement indicating whether the collateral is consumer goods having an aggregate original purchase price of not less than three hundred dollars ($300) * * *." The question is whether this language was intended to require a separate formal recitation, or whether the information required by §6A-9-402(1), if inherently inconsistent with the code's definition of consumer goods (see 6A-9-109(1)), is sufficient to satisfy this subsection.

The petitioners take the position that where the status of the debtor or the description of the assets covered by the financing statement makes it impossible that the collateral be consumer goods as that term is defined by the code, §6A-9-402(5) does not require a separate formal statement. They argue that this construction of §6A-9-402(5) is mandated by the basic policy of the code to promote substance over form and "* * * to discourage the fanatical and impossibly refined reading of such statutory requirements * * *." Comment to U.C.C., §6A-9-402 n.5.

While §6A-9-402(5) is ambiguous as to the precise nature of the requirement created therein, the unqualified command that the financing statement "shall contain a statement" and the fact that this requirement is contained in a separate subsection suggest that the Legislature envisioned an express formal recitation. Moreover, §6A-9-402(5) was adopted as a means of implementing the prohibition found in §6A-9-401(1)(c) against receiving for filing financing statements where the collateral is

low-cost consumer goods. Any construction of the requirements of §6A-9-402(5) must be made with primary reference to this very specific purpose, and only secondarily in light of the more general policies of the code. An unvarying requirement of an express formal statement greatly facilitates the implementation of §6A-9-401(1)(c) by making unnecessary the potentially difficult determination of whether the terms used to identify the debtor and to describe the collateral were necessarily inconsistent with the definition of consumer goods contained in §6A-9-109(1).

The petitioners argue that in past cases other persons have been required to understand and apply the terms of the Rhode Island Commercial Code and that the Secretary of State should be treated no differently. While it is true that this court has held coreceivers to a basic knowledge of technical financial terminology, *Matthews* v. *Arctic Tire, Inc.*, 106 R. I. 691, 262 A.2d 831 (1970); *South County Sand & Gravel Co., Inc.* v. *Bituminous Pavers Co.*, 106 R. I. 178, 256 A.2d 514 (1969), the Legislature may choose to relieve the Secretary of State of this burden. Moreover, the subsections of §6A-9-402 at issue in these cases are notice provisions to be construed in light of the concept of notice filing. Section 6A-9-402(5), on the other hand, is not a notice provision, but rather a means to accomplish a very specific end, ensuring that no financing statements covering low-cost consumer goods are accepted for filing. This difference in purpose warrants the difference in construction.

Having concluded that petitioners failed to satisfy §6A-9-402(5), we now reach the question of the legal effect of this noncompliance. The Trustee in Bankruptcy argues that as the only purpose of filing is to obtain perfection, failure to comply with all the requirements for a financing statement must necessarily affect perfection. Other-

wise, the Legislature will be seen to have engaged in an exercise in futility.

. This court will not ascribe to the Legislature an intention to enact legislation devoid of any purpose. *Town of Scituate* v. *O'Rourke,* 103 R. I. 499, 239 A.2d 176 (1968); *Ewing* v. *Frank,* 103 R. I. 96, 234 A.2d 840 (1967). We do not believe, however, that merely because §6A-9-402 (5) may not affect perfection, it is necesasrily inefficacious. As was noted above, the primary thrust of §6A-9-402(5) is to provide a mechanism for the implementation of §6A-9-401(1)(c). The question before us is whether the failure to comply with this method of implementation is punishable by forfeiture of perfection.

Section 6A-9-402(1) opens with the statement that a financing statement is sufficient to accomplish perfection of a security interest if it is properly signed, gives the address of the debtor, and contains a description of the collateral. It concludes with the unequivocal statement that "[a] copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by both parties." §6A-9-402(1). No suggestion is made that there might be any further requirements for sufficiency.

Section 6A-9-402(5) is not the only Rhode Island addition to this section of the uniform code. For the situation in which the collateral is crops or fixtures, the Legislature added the requirement that the financing statement include the name of the record owner. This requirement was inserted into §6A-9-402(1) and is, therefore, clearly a prerequisite to a sufficient financing statement. In striking contrast the $300 clause requirement was placed in a separate subsection which makes no mention of sufficiency.

Another major indicator of legislative intent is the purpose clause of §6A-9-402(5) which reads as follows: "For

purposes of determining whether a financing statement or security agreement shall be received for filing (see §6A-9-401(1)(c))." The reader is referred to §6A-9-401(1)(c) which also speaks in terms of whether a financing statement shall be received for filing. In both clauses the emphasis is clearly placed on the narrow ministerial question of whether a financing statement should be received for filing, and not whether once received, the statement is sufficient to accomplish perfection.

Section 6A-9-402(5) also includes the following savings clause: "* * * but the omission of such statement shall not affect the validity of the security interest described therein." The Rhode Island Uniform Commercial Code does not define "validity", and the authority cited by the parties for one interpretation or another does not appear to be conclusive of the term's meaning in the context of §6A-9-402(5). The petitioners argue, however, that whatever the legal effect of the requirement of a $300 clause, there can be no impact on the basic attachment of the security interest as this is purely a matter between the parties to the original security agreement. *See Rodi Boat Co.* v. *Provident Tradesmens Bank & Trust Co.*, 236 F. Supp. 935 (E.D.Pa.), *aff'd*, 339 F.2d 259 (3d Cir. 1964); *Bramble Transportation, Inc.* v. *Sam Senter Sales, Inc.*, 294 A.2d 97 (Del. Super. 1971), *aff'd*, 294 A.2d 104 (Del. 1972); §§6A-9-201 and 6A-9-204. From this premise, they conclude that unless the savings provision merely reiterates the obvious point that the omission of the statement required by §6A-9-402(5) does not affect the attachment of a security interest, the term "validity" must be equated with perfection. We find this reasoning persuasive as it is settled law in Rhode Island that every word, sentence, or provision of a statute is presumed to have been intended for some useful purpose and to have some force and effect. *Merciol* v. *New England Tel. & Tel. Co.*,

110 R. I. 149, 290 A.2d 907 (1972). When the ambiguous term "validity" is replaced by the term "perfection", the savings clause stands as an unequivocal expression of legislative intent to enact a ministerial provision, created for the purpose of implementing the other Rhode Island addition to this area of the uniform code, §6A-9-401(1) (c); as such §6A-9-402(5) is not a condition precedent to perfection.

This conclusion is reinforced by the overall conception of §6A-9-402. This court has held that §6A-9-402 provides for "notice filing." *Matthews* v. *Arctic Tire, Inc., supra; South County Sand & Gravel Co., Inc.* v. *Bituminous Pavers Co., supra.* A financing statement need only provide interested parties with the information that a secured transaction has taken place and that the particulars thereof may be obtained from the named security party at the address shown. The formal requisites found in §6A-9-402(1) are designed to elicit this basic information. As was noted above, however, a statement indicating whether the collateral is low-cost consumer goods is completely unresponsive to this purpose. To make perfection turn on a requirement unrelated to notice is not only nonsensical, but in this case needless, as the purpose of §6A-9-402(5), to implement the imperative contained in §6A-9-401(1)(c), may be accomplished by simply refusing to accept a financing statement not containing a separate formal $300 clause.

We conclude, therefore, that under the Rhode Island Uniform Commercial Code, a financing statement, accepted for filing and in fact filed with the Secretary of State, is sufficient to perfect a security interest if the formal requisites of §6A-9-402(1) are satisfied, even though it does not contain a separate formal statement indicating whether the collateral is consumer goods having

an aggregate original purchase price of not less than $300, excluding interest, insurance, and other charges.

Mr. Justice Joslin did not participate.

Mr. Chief Justice Roberts, dissenting. Responding to the certified question, the majority conclude that under the pertinent statutory provisions a financing statement accepted for filing and, in fact, filed by the Secretary of State is sufficient to perfect a security interest if the requirements of §6A-9-402(1) are satisfied. They further state that these requirements may be satisfied even though such a financing statement does not contain a separate, formal statement asserting that the collateral is not consumer goods having an aggregate original purchase price of not less than $300 excluding interest, insurance, and other charges. With this conclusion I am unable to agree, as I believe that it is based on a misconception of the thrust of the pertinent provisions of §6A-9-401(1)(c).

It is not disputed that a financing statement must be filed pursuant to the statute in order to perfect a security interest, §6A-9-302(1), and that a security interest in certain collateral that is not perfected as a consequence of a valid filing becomes subordinate to the rights of the trustee in bankruptcy, §6A-9-301(1) and (3). Section 6A-9-401(1)(c) requires as a condition precedent to the perfecting of a security interest the filing thereof with the Secretary of State. That section specifically provides "* * * that no financing statement or security agreement shall be received for filing where the collateral is consumer goods having an aggregate original purchase price of less than three hundred dollars ($300) * * *." The mandatory character of this latter provision is made abundantly clear by the words, "no financing statement * * * *shall* be received for filing * * *." (Emphasis added.)

The language of the statute above quoted, in my opinion, is susceptible of but one clear and sensible con-

struction: that financing statements for security interests in which the collateral is consumer goods of an original value of less than $300 are to be excluded from the filing procedure and, consequently, denied perfection. Without speculating as to the reasons upon which the Legislature predicated its decision to deny perfection to such instruments, I point to the well-settled rule that it is within the legislative power to declare public policy and that courts should not thwart such a declaration under the guise of construing the language of an unambiguous statute. To permit a creditor to obtain perfection of a security interest in consumer goods of a value less than $300 if the financing statement was filed as a result of inadvertence or misunderstanding on the part of the Secretary of State would be to encourage attempts to avoid the statutory prohibition and thus to undermine its effectiveness. Consequently, I believe even though a financing statement of a security interest in less than $300 worth of consumer goods has been filed as a result of some administrative oversight, such interest should not be deemed perfected.

Recognizing the difficulties that might be involved in ascertaining whether a security interest, the subject of a proffered financing statement, involved collateral of consumer goods of a value less than $300, the Legislature enacted §6A-9-402(5). That section provides:

> "For purposes of determining whether a financing statement or security agreement shall be received for filing (see §6A-9-401(1)(c)) said financing statement or security agreement shall contain a statement indicating whether the collateral is consumer goods having an aggregate original purchase price of not less than three hundred dollars ($300) * * *."

As in the case of §6A-9-401(1)(c), the language of this section makes mandatory the disclosure that the collateral is not consumer goods of a value less than $300. Absent

some statement that adequately discloses that the collateral is not consumer goods of a value less than $300, a financing statement is not eligible for filing. If it is filed by inadvertence or mistake on the part of the Secretary of State, such filing should be deemed void and, thus, incapable of perfecting the security interest described in the deficient financing statement.

I do not subscribe, however, to the proposition that a financing statement which conforms to the sufficiency requirements of §6A-9-402(1), to be eligible for filing and, consequently, perfection, must contain a separate and formal statement included solely for the purpose of indicating whether the collateral is consumer goods of a value less than $300. The statement contemplated by §6A-9-402(5) is not required by the statute to be set out in any precise language or specific form. All that the statute requires is that the agreement "shall contain a statement indicating whether the collateral is consumer goods." I am of the opinion that the Legislature, in using the word "indicating," intended as sufficient for compliance with §6A-9-402(5) a disclosure in the financing statement that would inform the reasonable reader of the nature and value of the collateral.

The question certified to this court is phrased so broadly as to preclude our consideration of the question whether the financing statements involved in the instant case satisify the above-mentioned standard of disclosure. Thus, such a determination will fall within the province of the bankruptcy court.

In my opinion, the savings clause, so called, set out in §6A-9-402(5) presents no difficulty. The clause reads that "* * * the omission of such statement shall not affect the validity of the security interest described therein."

This clause is clearly a statutory rule of construction introduced by the Legislature to insure that, in inter-

preting the statute, the courts will not rule that the improper filing of the agreement, if it happens to escape the scrutiny of the Secretary of State, will affect the original agreement between the debtor and the creditor. In other words, the Legislature wanted to make clear that a failure, by reason of the omission of the clause, to perfect the agreement by acomplishing a proper filing with the Secretary of State by reason of the omission of the clause would not be intepreted as invalidating the security agreement between the debtor and the creditor named therein.

*William C. Hillman,* Special Counsel to the Trustee-in-Bankruptcy, for petitioner.

*Joseph B. Manello, Widett & Widett,* Boston, *Richard S. Mittleman, Zietz, Sonkin & Radin,* for James Talcott, Inc.

*Alfred B. Stapleton, Robert W. Edwards, Jr.,* for Nat'l Commercial Finance Conference, Inc., Amicus Curiae.

*Peter F. Coogan, Ropes & Gray,* Boston, *James Radin, Zeitz, Sonkin & Radin,* for General Electric Credit Corporation.