397 A.2d 902.

SHIRLEY R. HUNTLEY *vs.* DEPARTMENT OF
EMPLOYMENT SECURITY.

FEBRUARY 16, 1979.

PRESENT: Bevilacqua, C.J., Joslin, Kelleher, Doris and Weisberger, JJ.

WEISBERGER, J.   This is a petition for certiorari brought under the Administrative Procedures Act, G.L. 1956 (1977 Reenactment) §42-35-16, to review a judgment of the Superior Court affirming a decision by the Board of Review of the Department of Employment Security (the board). The board had previously upheld the decision of the referee and denied benefits to claimant.

The claimant, Mrs. Huntley, was employed for 7 years as an inspector on the second shift for a Providence manufacturing concern. She became ill on October 17, 1974, and stopped working. The claimant attempted to return to work on January 15, 1975, but there was no work. One week later, she was told by the employer that she could return to work on the first shift beginning at 7 a.m. The record indicates, however, that claimant informed the employer's personnel manager that she could not accept first-shift employment because she had four children aged 13 and under, including a 9-year-old son with muscular dystrophy who had to be walked to and from school.

The Director of the Department of Employment Security (the director) initially stated in her report that a person must be available for all hours normally worked in his or her occupation and determined that the claimant had voluntarily quit her employment without good cause. The director also determined that claimant had received benefit overpayments for the period of the week ending February 1, 1975 through the week ending March 1, 1975 and ordered restitution. In an amended decision the director found that claimant was unavailable for work because she was unable to work all shifts in a multi-shift industry. In addition, the director determined claimant had not informed the local office of the Department Security that work was available to her on January 22, 1975. Consequently, the director denied benefits for the week ending January 25, 1975 and indefinitely thereafter and again ordered restitution.

Claimant appealed from the amended decision, and on April 23, 1975 a hearing was held before a referee who concluded that claimant had restricted her availability to work to shifts other than the first shift and that this restriction caused her unemployment. Thus, the referee concluded that claimant did not meet the availability requirements of G.L. 1956 (1968 Reenactment) §28-44-12, and benefits were denied on that basis. This decision was appealed to the board which also conducted a hearing. Claimant's counsel represented at the hearing that claimant would be available for work beginning at 8 a.m., presumably on regular working days. This representation was not supported by any testimony, either before the referee or the board. The claimant did, however, state in specifying her reasons for appeal from the decision that she could begin work at 8:30 a.m. or 9 a.m. The board approved and confirmed the decision of the referee.

The claimant appealed to the Superior Court which viewed the decision in *Chaharyn* v. *Department of Employment Security*, 85 R.I. 75, 125 A.2d 241 (1956), as

controlling and as requiring 24-hour availability without restrictions of any kind. Therefore, the decision of the board was affirmed.

A number of cases have considered whether statutes similar to ours require availability for work on a 24-hour basis. *See St. Germain* v. *Adams,* 117 N.H. 659, 377 A.2d 620 (1977); *Carson* v. *Department of Employment Security,* 135 Vt. 312, 376, A.2d 355 (1977). These cases suggest that there must be a substantial and unequivocal attachment to the labor market in order to meet the availability requirement. Although the cases do not require 24-hour availability, they required a substantial likelihood that the applicant can obtain employment in spite of certain limited or nonsubstantial restrictions.

Our decision in *Chaharyn* v. *Department of Employment Security, supra,* is generally consonant with these principles. There a graduating law student voluntarily left his job as a designer to pursue a clerkship required for admission to the bar. He went to the local office of the Department of Employment Security to register for work and claim statutory benefits, and included in his application a statement that he would not be available for work during the daytime hours while he was occupied as a law clerk. We observed in *Chaharyn* that the claimant had represented he was not available for work during the period normally worked by most persons in his profession. Accordingly, we held the claimant had so restricted his availability in advance that he was substantially removed from the labor market and therefore not entitled to benefits. In particular, we noted that:

> "In our opinion a claimant who in advance materially restricts or limits his availability and willingness to accept work, other than as specifically provided for in the act, has not registered *for work* under the act."

85 R.I. at 81, 125 A.2d at 244. We continued by saying that:

"It is our opinion that by the use of the phrase 'register for work', the legislature intended a claimant must first register *for work* in a way that will genuinely attach him to the labor market without any conditions or restrictions, other than those provided in the statute, in order to become eligible for aid and an offer of a job."

85 R.I. at 82, 125 A.2d at 245.

Although our opinion in *Chaharyn* contains language which might be construed to require a claimant to register for work, without restriction, on a 24-hour basis, such a construction would go considerably beyond the holding of the case required by the facts which were presented.[1] We believe that §28-44-12 does not require a 24-hour availability, but that this statute read in the light of

---

[1]Our Brother Joslin in his dissent emphasizes the legislative acquiescence in the construction in *Chaharyn* v. *Department of Employment Security*, 85 R.I. 75, 125 A.2d 241 (1956) of a statute substantially identical with the statute in the case at bar. We should point out that this acquiescence was directed to the holding in the case, and not to the general expressions which went beyond the requirements of the issues presented for decision. Sage advice as to the vitality of dicta was given by the Supreme Court of the United States more than 150 years ago, when Chief Justice Marshall observed:

> "[G]eneral expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the Court is investigated with care and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

*Cohens* v. *Virginia*, 19 U.S. (6 Wheat.) 264, 399-400, 5 L.Ed. 257, 290 (1821). The court in *Chaharyn* was not faced, as we are in the case at bar, with an individual whose availability may be restricted for only an hour or two per day. Even without significant change in statutory language, this precise issue deserves our considered present judgment without inhibition from general expressions enunciated by a court which was not confronted with this same question. To indulge in the theory that all claimants who apply for unemployment compensation benefits must be available, without restriction, 24-hours-a-day would impose a truly stringent requirement. Such a holding was not impelled or even obliquely necessitated by the facts of *Chaharyn*.

*Chaharyn* is designed to insure that claimants filing for benefits be available for work in a manner that substantially attaches them to the labor market. Expressed in another way, we believe restrictions that substantially impair the claimant's attachment to the labor market render a claimant unavailable for work.

The record in the case presented to the court is such that the Superior Court could well have determined that the board was not clearly erroneous in finding that the claimant's availability was substantially restricted. However, the court did determine that *Chaharyn* mandated 24-hour availability without restrictions of any kind. With this holding we are in disagreement.

We find persuasive the doctrines suggested in *Sanchez v. Unemployment Insurance Appeals Board*, 20 Cal.3d 55, 569 P.2d 740, 141 Cal. Reptr. 146 (1977), and in *Tung-Sol Electric, Inc. v. Board of Review*, 35 N.J. Super. 397, 114 A.2d 285 (1955), that availability may be restricted for good cause so long as the restriction does not prevent the claimant from being genuinely attached to the labor market or available to a substantial field of employment. It should be noted that the doctrine of *Sanchez* is somewhat more sweeping than we are willing to espouse, and that New Jersey's statute in *Tung-Sol* specifically permitted some degree of restriction to be placed upon availability.[2]

---

[2]In *Sanchez v. Unemployment Ins. Appeals Bd.* 20 Cal.3d 55, 569 P.2d 740, 141 Cal. Rptr. 146 (1977), the Supreme Court of California held that parental responsibilities would constitute good cause for restricting availability, *even though such restriction might be significant,* so long as claimant is still available to a "substantial field of employment." The burden of proof on the issue of whether claimant is available to a "substantial field of employment" was placed upon the department. In *Tung-Sol Elec., Inc. v. Board of Review*, 35 N.J. Super. 397, 114 A.2d 285 (1955), the appellate division of the New Jersey Superior Court declined to hold as a matter of law that a female claimant's parental responsibilities which limited her availability to a second shift would cause her to forfeit her unemployment compensation benefits. The court recognized that there is a substantial split of authority on this question and that in most jurisdictions which have dealt with the matter, a female worker may not limit her availability to a

Many cases have adopted a rationale set forth in Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 124 (1945):

> "The availability requirement is said to be satisfied when an individual is willing, able, and ready to accept suitable work which he does not have good cause to refuse, that is, when he is genuinely attached to the labor market. Since, under unemployment compensation laws, it is the availability of an individual that is required to be tested, the labor market must be described in terms of the individual. A labor market for an individual exists when there is a market for the type of services which he offers in the geographical area in which he offers them. 'Market' in this sense does not mean that job vacancies must exist; the purpose of unemployment compensation is to compensate for the lack of appropriate job vacancies. It means only that the type of services which an individual is offering is generally performed in the geographical area in which he is offering them."

This rationale gave rise to the two-step procedure utilized in

---

certain shift or period of time because she must care for her children or fulfill family obligations at other times. However, there are a substantial number of authorities which recognize that family, religious or personal reasons may be sufficiently compelling to constitute good cause to limit availability and yet leave the claimant sufficiently attached to the labor market to retain eligibility for unemployment compensation benefits. *Yordamlis v. Fla. Indus. Comm'n*, 158 So.2d 791 (Fla. Dist. Ct. App. 1963); *Hacker v. Review Bd.*, 149 Ind. App. 223, 271 N.E.2d 191 (1971); *St. Germain v. Adams*, 117 N.H. 659, 377 A.2d 620 (1977); *Roukey v. Riley*, 96 N.H. 351, 77 A.2d 30 (1950); *In Re Watson*, 273 N.C. 629, 161 S.E. 2d 1 (1968); *Leonard v. Unemployment Compensation Bd. of Review*, 148 Ohio St. 419, 72 N.E. 2d 567 (1947); *Trexler v. Unemployment Compensation Bd. of Review*, 27 Pa. Commw. Ct. 180, 365 A.2d 1341 (1976); *Erie Resistor Corp. v. Unemployment Compensation Bd. of Review*, 172 Pa. Super. 430, 94 A.2d 367 (1953). *See* Altman & Lewis, *Limited Availability for Shift Employment: A Criterion of Eligibility for Unemployment Compensation*, 22 N.C. L. Rev. 189 (1944); Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 129-30 (1945); Menard, *Refusal of Suitable Work*, Yale L.J. 134, 147 (1945). *Cf. Swenson v. Employment Security Comm'n*, 340 Mich. 430, 65 N.W. 2d 709 (1954) (claimant who would not work from sundown Friday to sundown Saturday for *religious* reasons held available).

*Sanchez, supra,* wherein the court first determined that a claimant had the right to refuse unsuitable work or work which the claimant would have good cause to refuse. Thereafter, the court held that the claimant would still be available for work within the terms of the statute so long as such claimant was available to a "substantial field of employment."

It should also be noted that §28-44-12 specifically provides that "[n]o individual shall be eligible for benefits for any week in which he fails, *without good cause,* to comply with the requirements as set forth * * *." (Emphasis added.) Thus, we believe that *Chaharyn* does not have the effect of completely proscribing restrictions which may be placed upon availability for good cause so long as those restrictions do not materially impair availability for general employment in the field in which the claimant is qualified. We believe that parental responsibility may constitute good cause for limiting availability, so long as such limitation does not substantially impair a claimant's attachment to the labor market.

In a case very similar to the instant case, the Supreme Court of North Carolina observed:

> "It is difficult to imagine a better cause for rejection of employment in the late afternoon and evening than the responsibility of a mother for the care of a nine year old child who would otherwise be without supervision * * *." The alarming increase in juvenile delinquency in recent years has made it abundantly clear that society, as well as the parent, has a very material interest in the supervision and care of children after their release from school."

*In Re Watson,* 273 N.C. 629, 635, 161 S.E. 2d 1, 7 (1968). That court went on to reject the contention that to be eligible for benefits under North Carolina's Unemployment Compensation Act, one must be available for work at any and all times. Although it did not attempt to formulate an all-embracing rule for determining what constitutes availability for work, the court adopted a pragmatic test. It pointed out

that the claimant had worked many years on a particular shift and was actively seeking employment on that shift. This shift offered a majority of the jobs which were available in the community and which she was qualified to perform. Therefore, she was held to meet the statutory standard of availability.

A similar conclusion is suggested in Freeman, *Able to Work and Available for Work*, 55 Yale L.J. at 129-30:

> "The personal circumstances of a claimant who has to devote full time to the care of a sick member of the family, and who can therefore not leave him to accept work, do not leave him free to undertake any work. He is removed from any labor market and is not available for work. On the other hand, if he has the care of the sick person only at night so that he is free to accept full-time work during the day, he should be considered available for work. There is no doubt as to claimant's readiness and willingness to work during the hours designated by him. Reduced to its basic issue, then, the question is whether the availability of a claimant whose availability is limited to specific hours is so reduced that in fact he is no longer available for work. The test in such cases is whether there is a market for his services during the hours that he offers them in the locality. If there is such a market, claimant should be regarded as available for work."

The foregoing authorities persuasively suggest a rule of reason for Rhode Island under which a court faced with a question of availability for suitable work would make a two-step inquiry in the event that a claimant places any restrictions upon availability. First: are these restrictions bottomed upon good cause? If the answer is negative, the inquiry ends and the claimant is ineligible for benefits under the Employment Security Act. If the answer is affirmative, the second stage of the inquiry must be made: do the restrictions, albeit with good cause, substantially impair the claimant's attachment to the labor market? If the answer to this inquiry is

affirmative, then the claimant is still ineligible for benefits under the Act.

If, on the other hand, the restrictions do not materially impair the claimant's attachment to a field of employment wherein his capabilities are reasonably marketable, in the light of economic realities, then he is still attached to the labor market and is not unavailable for work in terms of our statute. For example, if a claimant, as in several cases cited, is unavailable for work for 2 or 3 hours out of the 24, in a multi-shift industry, it would be harsh, indeed, to declare such an employee unavailable. If a claimant placed such restrictions upon availability that he would only be available 2 or 3 hours out of 24 for work of a nature which he was able to perform, however good the cause or compelling the reason, he would have in effect removed himself from the labor market and could not, therefore, be eligible for employment benefits.

From this record we are unable to say that the Superior Court applied the standard which we consider appropriate in light of the principles herein expressed.

Therefore, we remand this case to the Superior Court with instructions to review the record in light of these principles. In order to apply the appropriate standard of availability, the Superior Court may remand the case to the board for the taking of further testimony on any issue of fact which the Superior Court considers to be explored inadequately on the present state of the record.

Mr. Justice Joslin, dissenting. The responsibility for establishing eligibility standards for unemployment compensation benefits lies with the Legislature. Our function is limited to interpreting the statute. that embodies the legislative will. If the language of the statute is free of ambiguity and expressed a definite and sensible meaning, there is no room for judicial construction and we read it literally. *Berberian* v. *Town of Westerly,* 119 R.I. 593, 597,

381 A.2d 1039, 1042 (1978); *In re Shepard Co.*, 115 R.I. 290, 293-94, 342 A.2d 918, 920 (1975); *Podboroski* v. *William H. Haskell Manufacturing Co.*, 109 R.I. 1, 8, 279 A.2d 914, 918 (1971); *Cataldo* v. *Pono*, 89 R.I. 240, 242, 152 A.2d 98, 99 (1959); *Blais* v. *Franklin*, 31 R.I. 95, 105, 77 A. 172, 177 (1910). If, however, its meaning is uncertain or ambiguous, we must ascertain as best we can what the Legislature intended and construe the enactment accordingly. *In re Shephard Co.*, 115 R.I. at 294, 342 A.2d at 922; *Mason* v. *Bowerman Brothers*, 95 R.I. 425, 431, 187 A.2d 772, 776 (1963); *Narragansett Electric Co.* v. *Harsch*, 117 R.I. 395, 402, 368 A.2d 1194, 1199 (1977); *Blais* v. *Franklin*, 31 R.I. at 105-06, 77 A. at 177.

Guided by these principles, this court in *Chaharyn* v. *Department of Employment Security*, 85 R.I. 75, 80, 125 A.2d 241, 243-44 (1956), held that:

> "There is nothing in the statute [G.L. 1938, ch. 284, §7(2), as amended by P.L. 1949, ch. 2175] to justify the conclusion that the legislature intended that a claimant might limit or restrict his availability for work to certain hours of the day, at least where the work he is qualified to perform is not likewise limited. To permit a claimant to place such restrictions on his availability, other than as specifically provided for in the statute, would violate the spirit and purpose of the act. Consequently a construction which leads to such a result should not be given to a legislative act, especially where it is susceptible of another and more reasonable interpretation."

Our construction in *Chaharyn* of the forerunner to the statute here at issue[1] was of general applicability and not

---

[1]Although G.L. 1956 (1968 Reenactment) §28-44-12, the statute construed in *Chaharyn* v. *Department of Employment Security*, 85 R.I. 75, 125 A.2d 241 (1956), was amended by P.L. 1973, ch. 180, §1, the changes were so insubstantial that even the majority does not suggest that they manifest a legislative intention to alter the standards for eligibility.

In the more than 20 years that have elapsed since *Chaharyn* was decided, the Legislature has not repudiated our construction. This long-standing acquiescence justifies the conclusion that it has approved that construction. *Eastern Scrap Services, Inc.* v. *Harty*, 115 R.I. 260, 262, 341 A.2d 718, 719 (1975); *Woonsocket Hospital* v. *Lagace*, 113 R.I. 95, 102, 318 A.2d 472, 477 (1974); *Trice* v. *City of Cranston*, 110 R.I. 724, 730, 297 A.2d 649, 652 (1972); *Mercurio* v. *A.R. Fascitelli & Fashion Builders, Inc.*, 107 R.I. 511, 516, 268 A.2d 427, 430 (1970); *Colarusso* v. *Mills*, 99 R.I. 409, 415, 208 A.2d 381, 385 (1965).

The majority fails to give that legislative approval the respect to which it is entitled and in so doing exceeds the judicial function, which is not to redraft but to construe what the Legislature has enacted. *Goldman* v. *Forcier*, 68 R.I. 291, 297, 27 A.2d 340, 343 (1942); *Moretti* v. *Division of Intoxicating Beverages*, 62 R.I. 281, 286, 5 A.2d 288, 290 (1939). Thus, even though I might agree with the majority on policy grounds that a worker's "availability may be restricted for good cause so long as the restriction does not prevent the claimant from being genuinely attached to the labor market or available to a substantial field of employment,"[2] judicial restraint prevents my rejection of a construction that the Legislature, by its acquiescence, has approved. Judges of a court of last resort are not free to substitute for the legislative will their own ideas of what is just, expedient, or politic. *Carlson* v. *McLyman*, 77 R.I. 177, 181, 74 A.2d 853, 855 (1950); *Blais* v. *Franklin*, 31 R.I. 95,

---

[2]In support of their view that "family, religious or personal reasons may be sufficiently compelling to constitute good cause to limit availability and yet leave the claimant sufficiently attached to the labor market to retain eligibility for unemployment compensation benefits," the majority on p. 6, n.2, cite Freeman, *Able to Work and Available for Work*, 55 Yale L.J. 123, 129-30 (1945) and Altman & Lewis, *Limited Availability for Shift Employment: A Criterion of Eligibility for Unemployment Compensation*, 22 N.C. L. Rev. 189 (1944). Freeman, however, at 124 n.8 lists Rhode Island as one of eleven states whose statutes contain "substantial variations" from those in effect in the states which have adopted the view espoused by the majority, and Altman & Lewis do likewise at 191-92, noting particularly at 192 that "Rhode Island requires availability for work 'whenever duly called for work through the employment office.' "

106, 77 A. 172, 177 (1910). This is what in my judgment the majority has done, and for this reason I must respectfully dissent.

I would deny the petition for certiorari, and quash the writ heretofore issued.

*David Green,* Rhode Island Legal Services, Inc., for petitioner.

*Joseph R. DeCiantis,* Legal Counsel, Board of Review, for respondent.