[Civ. No. 7173. Third Dist. Oct. 1, 1945.]

JUNE GARCIA, Petitioner, v. CALIFORNIA EMPLOY-
MENT STABILIZATION COMMISSION et al., Respon-
dents.

Charles J. Janigian for Petitioner.

Robert W. Kenny, Attorney General, and Clarence A. Linn and Doris H. Maier, Deputies Attorney General, for Respondents.

PEEK, J.—This is an original application for a writ of mandate to compel the California Employment Stabilization Commission to grant petitioner the benefits which she claims she is entitled to under the Unemployment Insurance Act [Stats. 1935, p. 1226, as amended] Deering's Gen. Laws, Act 8780d.

For the past eleven years petitioner has resided in Riverbank, which is located approximately ten miles from the city of Modesto. During the latter part of that time she was seasonally employed from April to November at the Riverbank cannery, which is situated half way between the two

communities. Transportation to and from her work was on a share-the-ride basis with neighbors. On May 17, 1943, in accordance with said act and regulations of the commission, she registered for work and filed her claim for unemployment insurance benefits. On November 20th, after the termination of the canning season, she filed a claim for additional benefits and as a result thereof was granted the maximum benefits. Her registration certificate shows that she registered for cannery or bottle labeling work only. A referral to employment was offered her on or about January 10, 1944, as a cannery worker on the day shift in a cannery located in Modesto, at the union scale of pay and under union conditions. She refused to accept the referral, her reason being that she had no means of transportation to the proffered work. Because of such refusal the department disqualified her from receiving benefits for the six weeks' period beginning January 9, 1944, and ending February 19, 1944, on the ground that she had failed to apply for suitable employment without good cause. She thereupon appealed to a referee who affirmed the original determination. In accordance with the provisions of said act she duly appealed from said decision of the referee to the respondent commission. A hearing was had at which claimant appeared with counsel, and thereafter the board, by a two to one decision, likewise decided against her.

In her petition for writ of mandate she asks that said decision be set aside "excepting only insofar as said decision holds that petitioner had not refused an offer of suitable employment." Therefore the sole issue presented to this court is whether the board properly determined that petitioner was not available for work within the meaning of section 57(c).

At the outset this court granted petitioner's request that we take original jurisdiction of her application for the reason that the petition presented a question of first impression involving interpretation of the act; that many hundreds of people in this state were in the same position as petitioner, living in small communities where the labor market was limited and each year were employed in seasonal work in other communities to which transportation was available only during seasonal work; that no work existed in their own communities, and because of the lack of transportation facilities they had no means of obtaining employment in the larger labor markets; that such persons were of limited means unable to undertake independent litigation and the amounts in any event

were relatively small; that therefore, a proper interpretation of such a remedial statute should be speedily, authoritatively and inexpensively determined by an appellate court.

Because of such circumstances we have with reluctance reached the conclusion that, by reason of the insufficiency of the evidence in the record filed herein to support the findings of the board, it is necessary that this application be remanded for further evidence, and, secondly, this must be done because of the apparent conflict in the findings of the board upon the evidence so introduced.

Under what is denominated "REASON FOR DECISION" the board first found that "because of the entire lack of transportation facilities . . . the work was not an offer of suitable employment as defined in section 13(a) of the Act. Therefore, claimant is not subject to the disqualification provided in Section 56(b) of the Act and Rule 56.1 adopted pursuant thereto." The board then found that "claimant's lack of any usable transportation to any work during the off season in the canning industry rendered claimant not available for work within the meaning of Section 57(c) of the Act." In amplification of these findings, the board, in its decision, states that it is of the opinion that the claimant's "lack of transportation to any possible work creates a personal circumstance which so restricts opportunities for employment of such a claimant as to render the claimant not available for work." Lastly the board found that "there was no work which the claimant could perform within walking distance of her home and she had no transportation to the nearest labor market in which she could become employed. Therefore, we conclude that claimant herein, during the period she lacked a means of transportation from her residence to any possible employment, was removed from the labor market and did not meet the availability requirement of section 57(c) of the Act." The decision of the board was that "Claimant is held not to have refused an offer of suitable employment. Claimant is further held not to be available for work. . . . Claimant is denied benefits."

Section 13(a) provides in part: "*Definition.* 'Suitable employment' means work in the individual's usual occupation or for which he is reasonably fitted. . . ." Under section 56 it is provided: "An individual is not eligible for benefits . . . (b) if without good cause he has refused to accept suitable employment when offered him . . .," while the "prerequisite

to eligibility" is defined in section 57 in part as follows: "An unemployed individual shall be eligible to receive benefits . . . *only* if the commission finds" that proper claim for benefits has been made; that proper registration for work has been made, and that (c) "he is able to work and available for work. . . ."

Under ordinary rules of statutory construction, the words "suitable employment" as used in said section 56 should be given the same meaning as they bear in section 13(a), which is the section defining the meaning of the term. Therefore, as applied to the instant case, if the work in the cannery at Modesto, which was offered to petitioner and which she refused to accept, was unsuitable as the board held because of the distance from her home, then it was not available to her and likewise she was not available for such work. It also would follow that the petitioner would not be available for work in other Modesto canneries as long as the distance and the lack of transportation prohibited the acceptance thereof by her. But this does not dispose of the entire question of availability. From the quoted portion of section 57 we find that an unemployed individual is eligible to receive benefits *only* if "able to work and available for work," while "suitable employment" as previously mentioned is defined in section 13(a) as work in the "individual's usual occupation or *for which he is reasonably fitted.*" (Italics ours.) These provisions suggest that a seasonal worker who cannot find employment in his usual occupation during the off season should endeavor to seek other work for which he is reasonably fitted.

However, the record, in regard to the points herein mentioned, does not disclose that claimant was unqualified for and would not have accepted work of a different character from that for which she registered. Her registration certificate shows that she was applying for cannery work in which she had had experience in most all of the seasonal crops. Although she testified she did not think she had had experience in any other work; yet when asked why she did not work in the spinach crop the previous year, she replied, "Last year I didn't because I was working at another place in Riverbank." Whether she understood she could apply or did apply for other kinds of unskilled work in her immediate locality does not appear.

Likewise it does not appear that there was not available in

Riverbank such work as she had done the previous year or that there was not some suitable work for which she was reasonably fitted or could have accepted. Although there is a finding by the appeals board that "it appears there was no work which the claimant could perform within walking distance of her home," no evidence appears in the record upon which such a finding could have been based.

In addition the record discloses that the proffered work at the Modesto cannery was for the day shift beginning at eight o'clock a. m., that a bus left Riverbank for Modesto at approximately eight thirty o'clock each morning, returning from Modesto at approximately four o'clock each afternoon. Claimant testified that she did not investigate to determine whether the job would have been available within the limitations of the bus schedule, nor was any evidence introduced by the examiner in this regard.

In reaching our determination that this matter must be remanded, we are strongly influenced by the case of *Hagadone* v. *Kirkpatrick,* —— Idaho —— [154 P.2d 181, 182]. There a claimant, a man sixty years of age, had been employed as a band saw filer by a lumber company for approximately twenty-seven years. When his employer discontinued seasonal operations the claimant was earning more than $2.00 per hour. He properly applied for employment and was offered two relatively unskilled jobs, neither of which he investigated, and both of which he rejected for physical reasons. His claim for unemployment benefits was denied, and on appeal the appeals board affirmed that determination. The Supreme Court, however, reversed the order of the board, holding that the findings were inconsistent and based on insufficient evidence and inadequate investigation, and therefore remanded the cause with appropriate instructions, saying:

"Under the facts and circumstances of the case at bar, the board should have more exhaustively inquired into the situation for the purpose of determining whether or not suitable employment of a like or suitable kind as claimant had theretofore performed, with like or similar wages and hours, was obtainable, and of such a nature that claimant could have performed due to his age and alleged physical condition and without exposure to cold. In other words, the board was not justified, in view of the limited investigation touching claimant's availability for work, in denying his claim and dismiss-

ing his application based solely on the ground that the referral jobs offered had not been accepted.

"The Unemployment Compensation Law must be liberally construed to the end that its purposes be accomplished. Availability for work requires no more than availability for suitable work which the claimant has no good cause for refusing."

 Although by reason of the disposition made of the present controversy it becomes unnecessary to decide any of the other issues involved, nevertheless we feel that mention should be made of a further question which has been posed by the findings of the board. As has been previously noted, section 56(b) of the act provides that an individual is not eligible for benefits "if, *without good cause,* he has refused to accept suitable employment." (Italics ours.) The determination of the board that the rejection of the referral work does not disqualify claimant, carries with it the implied determination that the refusal was for good cause, and likewise that the condition of unavailability to the Modesto labor market during the off season, was also for good cause. From this it logically follows that complainant was entitled to the benefits accruing under the act. Therefore, while the board's determination that the rejected work was unsuitable would be consistent with the finding that claimant had restricted herself from accepting such work at that distance under the existing conditions, that conclusion is inconsistent with the further finding that claimant had thus restricted herself without good cause.

 It is well established that the act under consideration is remedial and therefore must be liberally construed to effectuate the stated objects of the statute. (*California Emp. Com.* v. *Butte Co. etc. Assn.,* 25 Cal.2d 624 [154 P.2d 892]; *Matson Terminals Inc.* v. *California Emp. Com.,* 24 Cal.2d 695 [151 P.2d 202]; *California Emp. Com.* v. *Los Angeles etc. News Corp.,* 24 Cal.2d 421 [150 P.2d 186]; *Whitcomb Hotel, Inc.* v. *California Emp. Com.,* 24 Cal.2d 753, 758 [151 P.2d 233, 155 P.2d 405].) Thus, in conformity with the liberal interpretation which must be accorded to it, it would appear from the quoted portions thereof that, if the unavailability for work be involuntary and without fault, a claimant may not be deprived of benefits, and that therefore the holding of the board herein, in the absence of further evidence as previously indicated, would be erroneous. Directly in point with this question is the language in the Hagadone case, *supra*: "Avail-

ability for work requires no more than availability for suitable work which the claimant has no good cause for refusing.''

For the foregoing reasons the cause is remanded for further proceedings in accordance with the views herein expressed.

Adams, P. J., and Thompson, J., concurred.