[L.A. No. 30690. Oct. 5, 1977.]

MARIA DOLORES SANCHEZ, Plaintiff and Appellant, v.
UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
CARMEN VASQUEZ, Real Party in Interest and Respondent.

**COUNSEL**

Joseph P. Charney, Cary S. Reisman and Kenyon F. Dobberteen for Plaintiff and Appellant.

Woll & Mayer, J. Albert Woll, Marsha Berzon, Charles P. Scully, Donald C. Carroll and Stephen G. Schrey as Amici Curiae on behalf of Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Thomas Scheerer, Deputy Attorney General, for Defendant and Respondent.

No appearance for Real Party in Interest and Respondent.

**OPINION**

**MOSK, J.**—Maria Dolores Sanchez appeals from a judgment of the superior court denying her application for a writ of mandate to compel the California Unemployment Insurance Appeals Board to set aside its determination that she was ineligible for unemployment insurance benefits for the reason that she was not "available for work." (Unemp.

Ins. Code, § 1253, subd. (c).)[1] Because the court employed an erroneous standard of "availability" in reviewing the board's determination, we conclude the judgment denying the writ must be reversed. Moreover, since the decision of the board also clearly applies an interpretation of section 1253, subdivision (c), which conflicts with other provisions of the code, we direct the superior court to issue the writ in order to give the board an opportunity to apply the appropriate standard of availability to the facts of the case.

Claimant Sanchez applied for benefits from the Department of Employment Development on or about September 11, 1974.[2] At her "claim status interview" it was established that her last employment, as a restaurant waitress, had been terminated after a dispute between claimant and her supervisor as to work scheduling.[3] Claimant also informed the department that she could not accept work on either Saturdays or Sundays because on those days she must care for her four-year-old son. Sanchez's sister, who had previously looked after the child on weekends, had departed for Mexico a few days earlier.

The department concluded that Sanchez was not "able to work and available for work," in that her self-imposed exclusion from weekend employment eliminated a "major portion of her labor market" as a waitress. Her claim for benefits was denied with a citation to section 1253 of the code.[4]

Sanchez pursued an administrative appeal from this determination, and at the subsequent hearing she gave the only testimony. Her statements may be summarized as follows: During the previous nine years she had worked mainly in restaurants as a waitress or manager,

---

[1]Except where otherwise noted, the term "board" as used hereafter refers to the California Unemployment Insurance Appeals Board, and all statutory references (including the term "code") are to the Unemployment Insurance Code.

[2]The term "department" as used throughout this opinion refers to the Department of Employment Development.

[3]The board does not contend that Sanchez was disqualified due to the circumstances under which she left her previous work. This case thus presents no issue involving section 1256 of the code, which provides for disqualification if a claimant "left his most recent work voluntarily without good cause or . . . has been discharged for misconduct connected with his most recent work."

[4]Section 1253 reads in part, "An unemployed individual is eligible to receive unemployment compensation benefits with respect to any week only if the director finds that: . . . (c) He was able to work and available for work for that week."

although she had some factory work experience. As a restaurant worker she had usually worked on weekends, although in her last employment she had not worked on Sundays. She was ready to accept either restaurant or factory work during the week when her sister-in-law was available to tend to the child, and she imposed no time restrictions on such weekday work. Indeed, Sanchez had looked for both restaurant and factory employment without success; moreover, if her sister returned from Mexico she was prepared to accept weekend work as well.

Aside from Sanchez's own testimony, no evidence was received at the hearing concerning the size of the potential market for waitress labor within claimant's time restrictions.[5] Nor was evidence adduced as to the potential weekday market for factory work.

In affirming the department's denial of benefits, the hearing referee declared that in order to satisfy the availability requirement a claimant "cannot impose restrictions on suitable work, such as limitations on hours, days, shifts or wages, which will materially reduce the possibility of obtaining employment." He further found that "the evidence established that Saturday work in restaurants is required." Conceding that claimant might "be compelled to care for her child because she has no other person at this time," the referee nevertheless held that the "restriction substantially reduces her attachment to the labor market" and that she was "not available for work within the meaning of section 1253 (c) of the Code."

On claimant's further appeal, the board adopted the referee's opinion as its own and affirmed his decision.

The administrative record so far described was submitted with claimant's application for a writ of mandate to the superior court. In addition, the court "judicially noticed that restaurants in Los Angeles County and environs are generally open on Saturdays and Sundays." On this basis, the court found the board's decision supported by a preponderance of the evidence. The court concluded that claimant, "by not being able to work on weekends, was not available for work within

---

[5] Claimant was asked, however, "Are the weekend days usually busy in a restaurant?" She responded, "It depends on the zone that they are in. Sometimes it is in a commercial zone and so they have more during the week." This statement was apparently the only direct evidence in the administrative record bearing on the size of the market for weekday restaurant labor.

the meaning of Unemployment Insurance Code section 1253 (c) in that she materially reduced her opportunities for employment."

## *"Availability for Work"*

This appeal revives basic issues regarding the meaning of the availability requirement of section 1253 and its relationship to the code's penalties for rejection of offers of "suitable work" without "good cause." While the requirement that an applicant for unemployment benefits be "able to work and available for work" establishes a prerequisite to eligibility for any benefits, the code also provides a temporary disqualification from eligibility for an individual who "without good cause, refused to accept suitable employment when offered to him, or failed to apply for suitable employment when notified by a public employment office." (§ 1257, subd. (b).) Under section 1260, subdivision (b), this disqualification extends for "not less than 2 nor more than 10 consecutive weeks." Sections 1258, 1258.5, and 1259 either elaborate or qualify the "suitable employment" requirement.[6]

Confronted with this statutory scheme claimant contends that where "compelling reasons" to restrict employment exist, a determination of availability should not turn on whether such a restriction has "materially reduced" the chances of claimant's employment, but should instead involve an examination of whether, in spite of the restriction, reasonable prospects for employment remain. It is further urged that the availability provision should not be read so as to require claimants to be available for work which would not be "suitable" under section 1257, subdivision (b), or which a claimant would have "good cause" to refuse under that provision. Claimant's analysis concludes that both board and case-law precedents establish a two-step approach to availability questions. First, to be eligible under section 1253, subdivision (c), a claimant need be

---

[6]In particular, at the time this claim arose section 1258 defined "suitable employment" as follows: " 'Suitable employment' means work in the individual's usual occupation or for which he is reasonably fitted, regardless of whether or not it is subject to this division.

"In determining whether the work is work for which the individual is reasonably fitted, the director shall consider the degree of risk involved to his health, safety, and morals, his physical fitness and prior training, his experience and prior earnings, his length of unemployment and prospects for securing local work in his customary occupation, and the distance of the available work from his residence. Any work offered under such conditions is suitable if it gives to the individual wages at least equal to his weekly benefit amount for total unemployment.

"In any particular case in which the director finds it impracticable to apply one of the foregoing standards he may apply any standard which is reasonably calculated to determine what is suitable employment." (See also fn. 8, *post.*)

available only for " 'suitable work which the claimant has no good cause for refusing.' " (*Garcia* v. *California Emp. Stab. Com.* (1945) 71 Cal.App.2d 107, 113, 114 [161 P.2d 972].) Second, before finding a claimant "available" on this basis the department must also inquire whether he or she has thereby attached him or herself to a potential labor market of sufficient size so that "reasonable prospects for employment remain."

The board, in response, alludes to at least three possible interpretations of the "availability" requirement which would justify the denial of benefits to Sanchez. First it is suggested, in keeping with the standard applied by both the court below and the hearing referee, that any restriction which would "materially reduce" the possibilities for claimant's employment renders her unavailable within the meaning of section 1253, subdivision (c). Next the board potentially qualifies this broad rule with a second restriction, which would declare that a claimant need "be available for work throughout the week as is customarily or ordinarily required by work in his usual occupation." Finally, the claimant's previous work history is offered as a consideration, the board emphasizing here that "appellant worked weekends at her last previous employment, and she generally worked on weekends during her restaurant career." None of the interpretations advanced by the board would take into account whether the work that was the subject of a claimant's restrictions was in fact "suitable work" or work which the claimant would not have "good cause" to refuse under section 1257, subdivision (b).

The threshold question which we must resolve, then, is whether the availability requirement of section 1253, subdivision (c), imposes upon claimants an obligation to declare themselves available for work which is either "unsuitable" or which they would have "good cause" to refuse. The answer required by the structure of our unemployment insurance scheme—and the answer consistently given by both the courts and the board heretofore—is in the negative. Any other result would frustrate the policies inherent in the several statutory provisions regarding "suitable work" and "good cause" to refuse work. (§§ 1257, subd. (b), 1258, 1258.5, 1259.)

The combined effect of those sections is to allow a claimant to refuse, without risk of disqualification, work which is either unsuitable or which the claimant has other "good cause" to refuse. Yet the board would hold

that while a claimant who refuses specific referrals may not be temporarily disqualified, he may be declared unavailable and totally ineligible merely because he asserts in advance that he will refuse certain specific referrals which by hypothesis he could refuse without risk of disqualification.[7] Moreover, since a refusal of specific work might constitute evidence of general unavailability for similar work, if the suitability and good cause provisions do not limit the scope of the availability requirement, then refusals of unsuitable work or "good cause" refusals could become the basis of routine determinations of unavailability under section 1253.

It is not an overstatement to declare that such a rule "would render nugatory the 'suitable work' provisions" of the statute. (Freeman, *Able to Work and Available for Work* (1945) 55 Yale L.J. 123, 125.) Those provisions reflect a clear legislative policy that claimants shall not be required, at the risk of their benefits, to accept every job opportunity which may become available. For example, an applicant for benefits need not accept work which presents a risk to his "health, safety, and morals," or which fails to correspond to his "physical fitness and prior training" or his "experience and prior earnings."[8] The Legislature has not indicated that a claimant must nevertheless accept work at hours which threaten his "health, safety, and morals" if such work falls within the work week "customarily or ordinarily required by work in his usual occupation," or if such work comprises a "material" part of the market for his labor, or if he has performed such work in the past. The pervasive policies behind sections 1257 through 1259 admit no such arbitrary qualifications. The alternative would be to compel unemployed workers, upon pain of benefit loss, to make themselves available for work which the Legislature has defined either as "unsuitable" or as inherently

---

[7]Of course, this result might be rationalized as an attempt to force claimants into a particularistic confrontation with each job opportunity, rather than allowing a categorical advance rejection of given types of work as "unsuitable." We do not believe, however, that the intent of the Legislature was to produce an administrative charade whereby claimants would be encouraged to first announce their availability for every type of job and then reject every offer in a given category as "unsuitable" or the subject of a "good cause" refusal. The criteria of "suitability" set forth in section 1258, for example, are capable of generating meaningful classifications, and it is reasonable to assume the Legislature recognized the possibility that a claimant might be able to impose valid categorical restrictions under section 1258.

[8]Indeed, in 1975 the Legislature added language to section 1258 providing that in determining whether work is suitable for an individual, the "director shall consider . . . *such other factors as would influence a reasonably prudent person in the individual's circumstances.*" (Italics added.) The same amendment deleted the final two sentences of section 1258 as it read at the time this case arose. (Fn. 6, *ante.*)

providing "good cause" for refusal. It would make little difference that this result was achieved by a threatened determination of "unavailability" under section 1253, subdivision (c), rather than "disqualification" under section 1257, subdivision (b).[9]

Undoubtedly, these compelling considerations led the Court of Appeal in *Garcia* v. *California Emp. Stab. Com.* (1945) *supra,* 71 Cal.App.2d 107, 113, 114, to declare that " '[a]vailability for work requires no more than availability for suitable work which the claimant has no good cause for refusing.' " Parallel conclusions have been reached in other jurisdictions having unemployment insurance laws with similar "availability" provisions. (See, e.g., *Beaman* v. *Safeway Stores* (1954) 78 Ariz. 195 [277 P.2d 1010, 1013]; *Harper* v. *Unemployment Insurance Appeal Board* (Del. 1972) 293 A.2d 813, 815-816; *Inter-Island Resorts, Ltd.* v. *Akahane* (1962) 46 Hawaii 140 [377 P.2d 715, 722]; *Johnson* v. *Employment Security Agency* (1959) 81 Idaho 560 [347 P.2d 764, 766]; *Raborn* v. *Heard* (La.App. 1956) 87 So.2d 146, 148; *Dubois* v. *Maine Employment Security Commission* (1955) 150 Me. 494 [114 A.2d 359, 365]; *In re Troutman* (1965) 264 N.C. 289 [141 S.E.2d 613, 616]; *Roukey* v. *Riley* (1950) 96 N.H. 351 [77 A.2d 30, 31]; *Tung-Sol Electric* v. *Board of Review, etc.* (1955) 35 N.J.Super. 397 [114 A.2d 285, 288]; *In re Dunn* (1973) 131 Vt. 261 [305 A.2d 602, 605]; see also Williams, *Eligibility for Benefits* (1955) 8 Vand.L.Rev. 286, 291; Freeman, *op. cit., supra,* 55 Yale L.J. at p. 125; Altman, Availability for Work (1950) pp. 105-107; Mandelker, *Refusals to Work and Union Objectives in the Administration of Taft-Hartley and Unemployment Compensation* (1959) 44 Cornell L.Q. 477, 487; but see, e.g., *Robinson* v. *Maryland Employment Security Board* (1953) 202 Md. 515 [97 A.2d 300]; *Mississippi Employment Security Com'n* v. *Blasingame* (1959) 237 Miss. 744 [116 So.2d 213, 214-215]; *Jacobs* v. *Office of Unemployment Comp. and Place.* (1947) 27 Wash. 641 [179 P.2d 707].)[10]

---

[9]In view of the requirement of reading section 1253, subdivision (c), with reference to section 1257, subdivision (b), it was not necessary for the Legislature to provide an explicit "good cause" or "suitable work" qualification in section 1253 itself, and we do not view the absence of such a clause as dispositive.

[10]Moreover, the need to harmonize the eligibility and disqualification provisions of the statute has been recognized by the board itself. In Precedent Benefit Decision P-B 172 (1976) the board awarded benefits to a claimant who restricted her employment to five hours of work a day because of physical impairments. A referee had ruled that this restriction rendered claimant unavailable for work under the predecessor to section 1253, subdivision (c). The board reasoned, however, that "from the record before us, employment in excess of five hours would not be suitable for the claimant and she therefore could exclude such employment without rendering herself unavailable for work. . . ." (*Id.,* at p. 3.) Thus claimant's restrictions did not destroy her eligibility

However, the availability requirement is not satisfied merely by a willingness to accept all such "non-refusable" work. The purpose of the requirement has frequently been described as a way of assuring that a claimant is "attached to the labor market." (See, e.g., *Beaman, supra,* 277 P.2d at p. 1013; *Inter-Island Resorts, supra,* 377 P.2d at p. 722; *In re Dunn, supra,* 305 A.2d at p. 605; see also Freeman, *op. cit., supra,* at p. 124.) The description is hardly transparent, but it is helpful because it implies that "availability" makes some reference to the functions and needs of the economy as well as to the requirements of a particular worker. One consequence of this policy is that availability normally entails accessibility to work for which there is some social demand. (See, e.g., *Dubois, supra,* 114 A.2d at pp. 365-366; *Roukey, supra,* 77 A.2d at p. 32; Altman, *op. cit. supra,* at pp. 107-111.) Thus, a second element of the inquiry into availability consists of the determination whether, after a claimant has restricted his market to "suitable work which he has no good cause for refusing," he remains available for work for which there is a substantial field of potential employers. Both the *Garcia* case and the past decisions of the board contemplate that the initial test of willingness to accept suitable employment will be followed by an inquiry into the size of the market for such suitable labor.

In *Garcia* the claimant refused a job referral because she had no means of getting to the proffered work. The board held that her lack of transportation rendered her "unavailable." In reversing, the Court of Appeal rejected the notion that the claimant's inability to accept the job offer in itself made her "unavailable" since that refusal was, by the board's own finding, for "good cause." However, the court recognized that before the claimant could be declared "available," the case had to be remanded to the board for a determination as to whether "there was not available in [claimant's community] such work as she had done the previous year or . . . some suitable work for which she was reasonably fitted or could have accepted." (71 Cal.App.2d at pp. 111-112.) *Garcia* thus stands for the principle that a claimant cannot be required to be available for unsuitable work, or work which could be justifiably refused, as long as he remains available to a substantial employment field.

The board's own decisions also sharply delineate the outlines of this two-step inquiry. In Precedent Benefit Decision P-B 170 (1976) *supra,* at

because she "was ready, willing and able to accept suitable employment which she had no good cause to refuse . . . ." (*Ibid.*) (See also Precedent Benefit Decision P-B 170 (1976) p. 3.)

page 3, the board declared "There must be a dual finding where availability for work is at issue: first, that there is a willingness as well as readiness and ability to work, and, second, that there exists some reasonable probability in the claimant's locality for obtaining suitable employment so that the willingness to work, coupled with *some* prospects of work, can result in a finding that during the weeks for which benefits are claimed, the claimant has been ready, willing, and able to accept suitable employment in a labor market where that willingness may result in gainful employment." (Italics in original.) This approach was again applied in Precedent Benefit Decision P-B 172 (1976) *supra,* at page 3, in which the board concluded that the claimant could exclude unsuitable employment "without rendering herself unavailable for work, provided there remained a labor market in which there were reasonable prospects that the claimant could obtain the type of work she sought." Finally, the board has approved the eligibility of a student who restricted her availability to such work as would not "interrupt her attendance at school," noting that "a labor market, although small, does exist for the claimant." (Precedent Benefit Decision P-B 313 (1976) p. 4.)

In support of its position in the instant case the board relies on two opinions of the Attorney General, in particular on a statement to the effect that "if an individual's usual occupation, or work for which he is reasonably fitted, customarily, normally, or ordinarily calls for a seven-day work week, then such individual must be able to work and available for work each day of the week." (10 Ops.Cal.Atty.Gen. 208, 210 (1947); see also 24 Ops.Cal.Atty.Gen. 81 (1954).) We are, of course, not bound by the Attorney General's interpretation of the statute (*Smith* v. *Anderson* (1967) 67 Cal.2d 635, 641, fn. 5 [63 Cal.Rptr. 391, 433 P.2d 183]), nor are we persuaded by his argument. In his earlier opinion the Attorney General declares, citing *Garcia,* that "Availability for work as used in section 57(c) [predecessor to section 1253, subdivision (c)] requires no more than availability for suitable employment." (10 Ops.Cal.Atty.Gen. at p. 210.) However, the opinion then fails to consider the range of factors which might be taken into account in determining suitability (see § 1258) as well as *Garcia's* additional qualification of the availability requirement by the concept of "good cause." Moreover, the opinion is ambiguous as to whether a claimant is merely required to be available on days on which all employees in an occupation are customarily required to work, or whether an employee must be available to fill every customary work shift in every suitable field.

In either case, however, the opinion would substitute a rigid notion of "customary" requirements for the more realistic and flexible tests of "suitability," "good cause," and actual labor market exposure. Thus, if a claimant, in limiting himself to "suitable work which he has no good cause for refusing" were to restrict his availability to daytime work for which there was a substantial market, the Attorney General's opinion would nevertheless deny him benefits solely because other employers —perhaps more numerous—"customarily, normally, or ordinarily" required different work schedules. Such reasoning ignores the possibility that within a given occupation "customary" hours might gradually adjust to meet evolving needs of employers and employees, with the result that there would be no single standard weekly schedule. We refrain from adopting the opinion of the Attorney General, and the position of the board in this case, which would require importing into the statutory measure of availability an extraneous concept of "customary, normal, or ordinary" work schedules.

We therefore decline the department's invitation to disapprove the interpretation of section 1253, subdivision (c), contained in *Garcia.* ▮ While the construction of a statute by the officials charged with its administration is entitled to great weight (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]), here the board's adoption of the referee's decision contradicts its own prior rulings. In any case, " 'whatever the force of administrative construction ... final responsibility for the interpretation of the law rests with the courts.' " (*Ibid.*; see also *Whitcomb Hotel, Inc.* v. *Cal. Emp. Com.* (1944) 24 Cal.2d 753, 757 [151 P.2d 233, 155 A.L.R. 405].) ▮ "Availability for work" within the meaning of section 1253, subdivision (c), requires no more than (1) that an individual claimant be willing to accept suitable work which he has no good cause for refusing and (2) that the claimant thereby make himself available to a substantial field of employment.[11]

[11]The term "field" is used to avoid any implication that the measure of availability is necessarily the likelihood of employment in a given market. This approach is consistent with the precise purpose of the Unemployment Insurance Code, which is to provide relief for those unable to obtain suitable work (see § 100). While a concern for the "prospects" for employment was apparent in Precedent Benefit Decisions P-B 170 (1976) *supra,* and P-B 172 (1976) *supra* (fn. 10, *ante*), in Precedent Benefit Decision P-B 313 (1976) *supra,* at page 4, the board stated that "the test of availability may not be predicated upon the lack of openings for a claimant, but rather must be based upon whether there is a potential employment field." At the same time, our use of the qualifying term "substantial" is not meant to foreclose the possibility that even if an employment field is not large in absolute terms, it may nevertheless satisfy the availability requirement if it presents a substantial employment opportunity for a

■ In denying claimant's motion for a writ of administrative mandamus, the trial court concluded that her restrictions on weekend work rendered her ineligible under section 1253, subdivision (c) "in that she materially reduced her opportunities for employment." The court thus committed legal error in holding that claimant could be declared "unavailable" without a prior inquiry into whether the evidence established that she had "good cause" to refuse weekend work and whether such work was "suitable" for her under sections 1257 through 1259. The factual findings of the trial court are insufficient as a matter of law to sustain its legal conclusion, and the judgment denying the writ must therefore be reversed. (See, e.g., *Merrill* v. *Department of Motor Vehicles* (1969) 71 Cal.2d 907, 915, 917 [80 Cal.Rptr. 89, 458 P.2d 33]; *Yakov* v. *Board of Medical Examiners* (1968) 68 Cal.2d 67, 74, fn. 7 [64 Cal.Rptr. 785, 435 P.2d 553].)

Furthermore, it is apparent that the board, in adopting the opinion of the hearing referee, applied similarly incorrect criteria of availability. The referee supported his conclusion with the finding that "Although [claimant] may be compelled to care for her child because she has no other person at this time, that restriction substantially reduces her attachment to the labor market. Her search for work in factories does not necessarily alter the restrictions which materially reduce the possibilities of obtaining employment . . . ." The referee and the board manifestly believed that such a "material" or "substantial" reduction was sufficient to support a conclusion of unavailability. At no time during the administrative process was a determination made that weekend work was suitable work which the claimant lacked good cause to refuse. No evidence was taken which might support a conclusion that claimant did not remain available to a substantial field of weekday factory and

---

claimant.

We express no opinion as to whether and under what circumstances, if any, a claimant might be "available for work" within the meaning of section 1253, subdivision (c), despite the fact that he either is not available for all suitable work which he has no good cause for refusing (cf. Altman, *op. cit., supra,* at pp. 107-109; Freeman, *op. cit., supra,* 55 Yale L.J. at p. 126) or is not available to a substantial field of employment. This latter possibility might arise when, for example, a small town's principal employer shuts down its entire operation, both leaving its former employees unemployed and by hypothesis effectively removing the area's only significant field of potential employment. Were the two-step inquiry outlined here conceived as a definitive test of availability, the employees left behind in such a move might be declared ineligible for benefits. Yet arguably it is just such "persons unemployed through no fault of their own" who are appropriate recipients of unemployment benefits. (See § 100; see also Freeman, *op. cit., supra,* at pp. 127-128; Altman, *op. cit., supra,* at pp. 122-138, especially fn. 50 at p. 130 and accompanying text.)

restaurant employers.[12] In these circumstances it is appropriate to return the case to the board for further proceedings and the application of the proper standard of availability. (See Code Civ. Proc., §§ 43 and 1094.5, subd. (e).)[13]

Nevertheless, for the guidance of the board in this and future cases, we confront two issues implicated in this appeal which concern the application of the proper availability standard. First, we consider whether a parent has "good cause" for refusing to accept work which would conflict with duties to care for a minor child. A second problem is the appropriate allocation of the burden of proof on the issue of whether a claimant has made himself available to a substantial field of employment.

### Parental Duties as Restricting Availability

Numerous statutes emphasize the responsibilities of parents or guardians in the care and upbringing of children. Civil Code section 197 establishes a right of custody in the parents of an unmarried minor child. Other sections of our law provide for the designation of a particular adult or adults as custodians of a child should the initial status of the mother and father be disturbed by divorce, adoption, or other causes. (See Civ. Code, §§ 228, 229, 4600; Prob. Code, § 1407.) The parents of a child are under an obligation to "give him support and education suitable to his circumstances." (Civ. Code, §§ 196, 196a.) And they may be subject to criminal penalties if they neglect their responsibilities. (Pen. Code, §§ 270, 270f.) Because of the crucial importance of parental responsibility and supervision, it would be anomalous if the Legislature intended that the obligation of the prospective claimant of unemployment benefits to accept work be irreconcilable with the duties of parenthood.

In the unemployment insurance system, the need to balance such duties and the burdens of work is appropriately recognized in the "good

---

[12]The referee's finding that "the evidence established that Saturday work in restaurants is required" was without support in the record, if by that statement it was meant that claimant could not obtain restaurant work unless she was willing to work Saturdays. Neither is the proposition established by the fact that restaurants are open on weekends, or the fact that claimant had usually worked weekends in her previous jobs.

[13]Since the board applied an erroneous standard, it follows that its findings of "material reduction" in claimant's possibilities for employment did not support its decision as to availability or its order denying benefits. This lack of support constituted a "prejudicial abuse of discretion" under Code of Civil Procedure section 1094.5, subdivision (b).

cause" qualification to the availability requirements of the code.[14] ■ " '[T]he term "good cause" as used in the statute means an adequate cause, a cause that comports with the purposes of the Unemployment Insurance Code and with other laws.' " (*Syrek* v. *California Unemployment Insurance Appeals Board* (1960) 54 Cal.2d 519, 529 [7 Cal.Rptr. 97, 354 P.2d 625].) The responsibilities our laws place on parents, and the importance to their children and society that those duties be discharged, mandate that the "good cause" concept not be defined so narrowly as to compel unemployed parents who remain available to a significant labor market to fulfill their parental responsibilities only upon pain of losing their unemployment benefits.

■ We conclude that a claimant who is parent or guardian of a minor has "good cause" for refusing employment which conflicts with parental activities reasonably necessary for the care or education of the minor if there exist no reasonable alternative means of discharging those responsibilities.[15] Indeed, "It is difficult to imagine a better cause for rejection of employment . . . ." (*In re Watson* (1968) 273 N.C. 629 [161 S.E.2d 1, 7]; see also *Yordamlis* v. *Florida Industrial Commission* (Fla. 1963) 158 So.2d 791; *Tung-Sol Electric* v. *Board of Review etc.* (1955) *supra,* 114 A.2d 285, 288; see also Annot., 35 A.L.R.3d 1129, 1137-1145.)

### *Burden of Proof on "Substantiality" of Employment Field*

■ It has been repeatedly stated that the burden is generally on a claimant to prove his availability for work. (*Loew's Inc.* v. *California Emp. etc. Com.* (1946) 76 Cal.App.2d 231, 238 [172 P.2d 938]; *Ashdown* v. *State of California* (1955) 135 Cal.App.2d 291, 300 [287 P.2d 176]; *Spangler* v. *California Unemp. Ins. App. Bd.* (1971) 14 Cal.App.3d 284, 287 [92 Cal.Rptr. 266]; but cf. *Prescod* v. *Unemployment Ins. Appeals Bd.* (1976) 57 Cal.App.3d 29, 37-38 [127 Cal.Rptr. 540].) The allocation corresponds to the general rule that "a party has the burden of proof as to each fact the existence or nonexistence of which is essential to the claim for relief or defense that he is asserting." (Evid. Code, § 500.)

---

[14]Thus when the Legislature attempted to deny benefits to spouses who left work to perform "marital or domestic duties" it framed a separate disqualification provision (§ 1264) rather than relying on the disqualification provisions of section 1256, which incorporates a "good cause" concept. (§ 1264 was repealed (Stats. 1976, ch. 1169, § 1) after having been declared unconstitutional in *Boren* v. *Department of Employment Dev.* (1976) 59 Cal.App.3d 250 [130 Cal.Rptr. 683].)

[15]We do not reach the issue of whether such work is also not "suitable employment" within the meaning of section 1258 as it read at the time this case arose. (See fn. 6, *ante.*)

However, this rule by its own terms applies only "except as otherwise provided by law."[16] Thus we have held that "Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim." (*Morris* v. *Williams* (1967) *supra,* 67 Cal.2d 733, 760; see also *Garcia* v. *Industrial Accident Com.* (1953) 41 Cal.2d 689, 694 [263 P.2d 8].) We are satisfied here that the second step of the determination of availability—i.e., whether the claimant has made himself available to a "substantial field of employment"—calls for testimony regarding the size and character of the labor market which is "peculiarly within the knowledge and competence" of the department. The average unemployed claimant with obviously limited resources cannot be expected to provide evidence which may be relatively complicated, expert, or difficult to obtain regarding local and area economic conditions. Nor would it be efficient to require the presentation of such data in every case on an issue which might be the subject of dispute in but a few.

Accordingly, once a claimant has shown he is available for suitable work which he has no good cause for refusing, the burden of proof on the issue of whether he is available to a "substantial field of employment" lies with the department. If the department believes that a given claimant, despite his availability for such suitable work, is nevertheless not attached to a labor market of sufficient dimension, it may be expected to explain its position and support it with appropriate evidence.[17]

## *Conclusion*

The rule of availability accepted by the board and the court below, if approved and generalized, might exclude from the coverage of the

---

[16]Moreover, "In determining whether the normal allocation of the burden of proof should be altered, the courts consider a number of factors: the knowledge of the parties concerning the particular fact, the availability of the evidence to the parties, the most desirable result in terms of public policy in the absence of proof of the particular fact, and the probability of the existence or nonexistence of the fact." (Cal. Law Revision Com. com. to Evid. Code, § 500, 29B West's Annot. Evid. Code (1966 ed.) p. 431.)

[17]Of course, in determining the "substantiality" of the employment field for which the claimant in the case at bar is available, the board may not ignore the fact that she is willing to accept factory work, even though she has previously worked mainly in restaurants. The purpose of the availability requirement is to insure a willingness to accept suitable work, not to tie a claimant to a previous occupation.

unemployment compensation insurance system thousands of parents who actively seek work but who must nevertheless reserve some time to fulfill essential parental obligations. Here the board claims authority to declare that a mother, who seeks employment in restaurants and factories, day or night, Monday through Friday, is not sufficiently attached to the labor market if she is unable also to accept weekend work which conflicts with her responsibilities to her child. Such insensitivity to the need of claimants to balance availability for work with parental duty is impossible to reconcile with the underlying social purposes of the unemployment insurance law. As *Garcia* recognized over 30 years ago, in the "good cause" and "suitable employment" provisions of the code the Legislature has sought to accommodate the differing circumstances of individual claimants in a manner which necessarily qualifies the general requirement that a claimant be "available for work." In the present context, the term "good cause" must be construed consistent with other expressions of legislative policy declaratory of the elementary obligations of parenthood.

The judgment is reversed with directions to issue a peremptory writ of mandate commanding respondent to set aside its decision and to reconsider the case in light of this opinion.

Bird, C. J., Tobriner, J., Clark, J., Richardson, J., Manuel, J., and Sullivan, J.,* concurred.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairperson of the Judicial Council.