[Civ. No. AO16428. First Dist., Div. Three. July 11, 1983.]

In re JUNIOUS M., a Minor.
DEPARTMENT OF SOCIAL SERVICES OF THE CITY AND
COUNTY OF SAN FRANCISCO, Petitioner and Respondent, v.
DIANA L., Objector and Appellant.

**[Certified for partial publication.\*]**

---

\*Certified for publication except as to part III. (Cal. Rules of Court, rules 976(b) and 976.1.)

**COUNSEL**

John F. Prentice, under appointment by the Court of Appeal, for Objector and Appellant.

George Agnost, City Attorneys, Thomas J. Owen, Craig M. McCabe and Robert H. Aaronson, Deputy City Attorneys, for Petitioner and Respondent.

## OPINION

### BARRY-DEAL, J.—

#### I. SUMMARY

We hold that in a child custody proceeding, if it appears that the minor may be an Indian child, the court must notify the tribe in question and must seek its determination of the child's Indian status, which determination is conclusive for the purpose of deciding whether the Indian Child Welfare Act of 1978 applies.

#### II. STATEMENT OF THE CASE AND OF THE FACTS

The minor's natural mother (appellant) appeals from a judgment entered after the trial court issued its order declaring Junious M. (the minor) free from parental custody and control. The minor's father did not participate in the proceedings and has not appealed. Appellant contends that the trial court erred in determining that the Indian Child Welfare Act of 1978 (the Act) did not apply to these proceedings. We conclude that the trial court erred in failing to notify the Nooksack Indian Tribe of the pending proceedings and that under the circumstances the error requires a qualified reversal of the judgment.

A detailed statement of the history of this case is not necessary to resolution of this appeal. We therefore offer this synopsis.

The minor was born on December 15, 1974, in San Francisco and declared to be a dependent child of the juvenile court on December 2, 1976. Appellant cared for him for about a year and a half or two years after his birth, and he was then placed with his maternal grandmother. He was placed with his foster mother in August 1978 and has remained with her to the present time. These placements were necessary because appellant was in and out of county jails and from about mid-1979 to December 1980 was incarcerated in state prison.

During the period of appellant's incarcerations, the Department of Social Services of the City and County of San Francisco (department) supervised three visits between her and the minor. Frequent visits were arranged after

she was released, some as a part of a reunification plan. These were not successful; the minor developed adverse physical symptoms as a result of nervous tension engendered by the visits. On several occasions he terminated the visits after a minute or two in his natural mother's presence.

Attempts by the department to work out a service agreement with appellant were unsuccessful because of appellant's lack of cooperation.

On August 25, 1981,[1] the department filed its petition to have the minor declared free from parental custody and control, pursuant to Civil Code section 232, subdivisions (a)(1) and (a)(7). On September 11, the petition was set for hearing on October 15, and counsel was appointed for the minor on September 28.

The Civil Code section 232 hearing took three days, beginning on Thursday, October 15. After the weekend recess, counsel for appellant raised for the first time the issue of applicability of the Act. Ultimately the trial court ruled that the Act was inapplicable to these proceedings.

On December 29, the court filed its order declaring the minor to be free from the custody and control of his natural parents. Judgment was entered on December 30. This appeal followed.

### III. Denial of Appellant's Code of Civil Procedure Section 170 Motion*

### IV. Applicability of the Act

▉ Appellant contends that the trial court erred in determining that the notice provisions of the Act did not apply, that this error violated the minor's due process rights, and that therefore the judgment of the trial court must be reversed and the cause remanded for further proceedings consistent with the Act. We conclude that notice to the tribe was required.

#### A. *Purposes and Scope of the Act*

The Act (25 U.S.C.A. ch. 21, §§ 1901-1963[3]) was enacted ". . . to protect the best interests of Indian children and to promote the stability and security of Indian tribes and families by the establishment of minimum Fed-

---

[1] All relevant dates are in the year 1981, unless otherwise indicated.

*Part III of this opinion is not certified for publication. (See fn.*, *ante,* at p. 786.)

[3] Unless otherwise indicated, all further statutory citations are to title 25, United States Code Annotated.

eral standards for the removal of Indian children from their families and the placement of such children in foster or adoptive homes which will reflect the unique values of Indian culture, . . ." (§ 1902.) The legislation was Congress' response to its findings that ". . . an alarmingly high percentage of Indian families are broken up by the removal, often unwarranted, of their children from them by nontribal public and private agencies and that an alarmingly high percentage of such children are placed in non-Indian foster and adoptive homes and institutions; . . ." (§ 1901, subd. (4); see generally, Barsh, *The Indian Child Welfare Act of 1978: A Critical Analysis* (1980) 31 Hastings L.J. 1287 (hereafter cited as Barsh); Note, *The Indian Child Welfare Act of 1978: Provisions and Policy* (1980) 25 San Diego L.Rev. 98.)

Subchapter I of the Act, with which we are concerned, deals with custody proceedings involving Indian children. " '[C]hild custody proceeding,' " as that term is used in the Act, refers to proceedings for foster care placement, termination of parental rights, preadoptive placement, and adoptive placement. (§ 1903, subd. (1).) An Indian tribe has exclusive jurisdiction over any such proceeding involving an Indian child who resides or is domiciled within its reservation. (§ 1911, subd. (a).)[4] Where the child is not so domiciled, and a proceeding is initiated in a state court, the court must transfer the proceeding to the jurisdiction of the tribe under certain circumstances. (§ 1911, subd. (b).) In cases which are not transferred, the tribe has the right to intervene in the state court proceedings. (§ 1911, subd. (c).)

## B. *Notice Provisions of the Act*

Of course, the tribe's right to assert jurisdiction over the proceeding or to intervene in it is meaningless if the tribe has no notice that the action is

---

[4]Section 1911 provides as follows: " *(a) Exclusive jurisdiction* [¶] An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child. [¶] *(b) Transfer of proceedings; declination by tribal court* [¶] In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe: *Provided,* That such transfer shall be subject to declination by the tribal court of such tribe. [¶] *(c) State court proceedings; intervention* [¶] In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child, the Indian custodian of the child and the Indian child's tribe shall have a right to intervene at any point in the proceeding. [¶] *(d) Full faith and credit to public acts, records, and judicial proceedings of Indian tribes* [¶] The United States, every State, every territory or possession of the United States, and every Indian tribe shall give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records and judicial proceedings of any other entity."

pending. (Barsh, *supra,* at p. 1313.) Section 1912 therefore provides: "In any involuntary proceeding in a State court, where the court knows or has reason to know that an Indian child is involved, the party seeking the foster care placement of, or termination of parental rights to, an Indian child shall notify the parent or Indian custodian[5] and the Indian child's tribe, by registered mail with return receipt requested, of the pending proceedings and of their right of intervention. . . . No foster care placement or termination of parental rights proceeding shall be held until at least ten days after receipt of notice by the parent or Indian custodian and the tribe . . .: *Provided,* That the parent or Indian custodian or the tribe shall, upon request, be granted up to twenty additional days to prepare for such proceeding." (§ 1912, subd. (a).)

Violation of the notice provisions may be cause for invalidation of the proceedings. (§ 1914.)

### C. *Presentation of the Issue to the Trial Court*

On October 19, the third day of the Civil Code section 232 hearing, the issue of applicability of the Act was raised to the court for the first time. Child welfare worker Robert Fogal testified that he had investigated the question of the minor's possible Indian child status beginning in November 1980, but that, based upon information received from previous workers, the federal government, appellant, and appellant's mother, he concluded that the Nooksack Tribe was Canadian and that therefore the Act did not apply.

Appellant testified that she is Filipino/Canadian Indian, that the Nooksack is her maternal grandfather's tribe, that her mother grew up on the reservation, which she (her mother) said was in Canada, and that to become a member of the tribe, appellant would have to go to Canada and register as an Indian.[6]

After the parties had rested, appellant's attorney argued, inter alia, that the Act might apply if the Nooksack Tribe was affiliated with tribes within the United States and that the court should obtain an opinion from the Secretary of the Interior on the point. The minor's attorney stated that she had not had time to explore the issue but would prepare a memorandum on the point. The court took the matter, including the issue of applicability of the Act, under submission.

---

[5] " 'Indian custodian' means any Indian person who has legal custody of an Indian child under tribal law or custom or under State law or to whom temporary physical care, custody, and control has been transferred by the parent of such child; . . ." (§ 1903, subd. (6).)

[6] Appellant also testified that the minor's paternal grandfather had told her that the minor's father was "Indian and black." An objection to this testimony was sustained.

After the hearing, the parties submitted additional documentary evidence and arguments to the court. On October 21, counsel for appellant informed the court that he had been in communication with the Department of the Interior and had been informed that the Nooksack Tribe is an American (i.e., United States) tribe. Appellant's confusion on the point appears to have been explained by the fact that the tribe was considered Canadian until 1973. Counsel also sent the court various documentary evidence in support of his position that the Act applied to these proceedings. Counsel for the foster mother and for the department submitted arguments against application of the Act, to which appellant's counsel responded.

Based upon this evidence and these arguments, the court held that the Act was inapplicable because the minor was not an " 'Indian child.' " Additional arguments were presented in conjunction with appellant's motion for new trial, which the court denied.

### D. *Notice Was Required*

As we have just explained, when the issue of applicability of the Act was raised, the trial court heard and considered testimony and documentary evidence upon which it based its conclusion that the minor was not an Indian child and that therefore the Act did not apply. The court erred in approaching resolution of the issue in this manner, since the question of whether the minor was an Indian child was one for the tribe to determine.

A major purpose of the Act is to protect ". . . Indian children who are members of or are eligible for membership in an Indian tribe; . . ." (§ 1901, subd. (3).) For purposes of the Act, " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; . . ." (§ 1903, subd. (4).) The Act requires that in any involuntary child custody proceeding, the court must notify the child's tribe where it ". . . knows or has reason to know that an Indian child is involved, . . ." (§ 1912, subd. (a).)

■■ ■■ ■■ On November 16, 1979, the Bureau of Indian Affairs of the Department of the Interior promulgated Guidelines for State Courts; Indian Child Custody Proceedings (44 Fed.Reg. 67584-67595 (Nov. 26, 1979) (hereafter Guidelines)).[7] These Guidelines begin with a statement of

---

[7]The Guidelines represent the Department of the Interior's interpretation of certain provisions of the Act; they were not intended to have binding legislative effect. (Guidelines, *supra,* at p. 67584.) However, the construction of a statute by the executive department charged with its administration is entitled to great weight. (See, e.g., *Worthington* v. *Unemployment Ins. Appeals Bd.* (1976) 64 Cal.App.3d 384, 389; see generally, 5 Witkin, Summary of Cal. Law (8th ed. 1974) Constitutional Law, § 70, pp. 3309-3310.) We have analyzed the Guidelines pertinent to the issue before us and are persuaded that they represent a correct interpretation of the Act. (Cf. *Sanchez* v. *Unemployment Ins. Appeals Bd.* (1977) 20 Cal.3d 55, 66 [141 Cal.Rptr. 146, 569 P.2d 140].)

the policy of the Act—that there is a preference for keeping Indian children with their families or with other Indian families and for deferring to tribal judgment on matters concerning custody of tribal children. (Guidelines, *supra,* at p. 67585.) "Proceedings in state courts involving the custody of Indian children *shall follow strict procedures and meet stringent requirements* to justify any result in an individual case contrary to these preferences." (Guidelines, *supra,* at p. 67586, italics added.) The Act and all regulations, guidelines, and state statutes relating to it ". . . shall be *liberally construed* in favor of a result that is consistent with these preferences. *Any ambiguities* in any of such statues, regulations, rules or guidelines *shall be resolved in favor of the result that is most consistent with these preferences."* (Guidelines, *supra,* at p. 67586, italics added.)

As to determining the status of a child as an Indian child, the Guidelines provide: "When a state court has *reason to believe* a child involved in a child custody proceeding is an Indian, the court *shall seek verification* of the child's status from either the Bureau of Indian Affairs or the child's tribe. . . . [¶] . . . *The determination by a tribe* that a child is or is not a member of that tribe, is or is not eligible for membership in that tribe, or that the biological parent is or is not a member of that tribe *is conclusive.* . . . [¶] . . . Circumstances under which a state court has reason to believe a child involved in a child custody proceeding is an Indian include . . . . [¶] . . . Any party to the case . . . informs the court that the child is an Indian child." (Guidelines, *supra,* at p. 67586, italics added.)

The commentary to this portion of the Guidelines states, "This guideline makes clear that the best source of information on whether a particular child is Indian is the tribe itself. It is the tribe's prerogative to determine membership criteria and to decide who meets those criteria. *Cohen, Handbook of Federal Indian Law* 133 (1942)." (Guidelines, *supra,* at p. 67586; Barsh, *supra,* at p. 1325; see *Santa Clara Pueblo* v. *Martinez* (1978) 436 U.S. 49, 62-66 [56 L.Ed.2d 106, 117-120, 98 S.Ct. 1670].)

The Guidelines further provide: "In any involuntary child custody proceeding, the state court shall make inquiries to determine if the child involved is a member of an Indian tribe or if a parent of the child is a member of an Indian tribe and the child is eligible for membership in an Indian tribe." (Guidelines, *supra,* at p. 67588.) The commentary explains, "This section recommends that state courts routinely inquire of participants in child custody proceedings whether the child is an Indian. If anyone asserts that the child is an Indian or that there is reason to believe the child may be an Indian, then the court shall contact the tribe or the Bureau of Indian Affairs for verification." (Guidelines, *supra,* at p. 67589.)

Although the Guidelines provide that a determination of tribal membership *vel non* should be sought from the tribe, that question may also be presented to the Bureau of Indian Affairs. The Guidelines state, "Absent a contrary determination by the tribe that is alleged to be the Indian child's tribe, a determination by the Bureau of Indian Affairs that a child is or is not an Indian child is conclusive." (Guidelines, *supra*, at p. 67586.) The commentary explains, "Because of the Bureau of Indian Affairs' long experience in determining who is an Indian for a variety of purposes, its determinations are also entitled to great deference. [Citation.]"

We conclude that error occurred when the trial court failed to notify the Nooksack Tribe of the pending proceedings so that it could make the determination whether the minor was an Indian child within the meaning of the Act.

### E. *Evidence Before the Trial Court*

■ ■■■ We examine the evidence before the trial court to determine whether the error was prejudicial.[8]

It will be recalled that " 'Indian child' means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe; . . ." (§ 1903, subd. (4).) There is no question that the minor is unmarried and under age 18. Thus, he· is an Indian child if he is (a) a member of the tribe or (b) is eligible for membership *and* his mother is a member.

The Constitution and Bylaws of the Nooksack Indian Tribe of Washington provide as follows:

"Article II—Membership

"*Section 1.* The membership of the Nooksack Indian Tribe shall consist of:

"(a) All original Nooksack Public Domain allottees, and their descendants living on January 1, 1942.

"(b) All persons of Indian blood whose names appear on the official census roll of the tribe dated January 1, 1942, provided that the January 1,

---

[8]Lack of notice is not necessarily prejudicial to the tribe, even where it is required. (*Matter of S.Z.* (S.D. 1982) 325 N.W.2d 53, 55.)

1942, roll may be corrected by the tribe with the approval of the Secretary of the Interior.

"(c) All persons born to any enrolled member of the Nooksack Indian Tribe subsequent to January 1, 1942, provided such persons possess at least one-fourth (¼) degree Indian blood.

"(d) No person shall be accepted for Nooksack membership who is enrolled as a member of any other organized tribe, band, or Indian community which is officially recognized by the Secretary of the Interior.

"(e) Official membership rolls of the tribe shall be approved by the governing body of the tribe and by the Secretary of the Interior or his authorized representative.

"*Sec. 2.* The governing body shall have the power to pass ordinances, subject to the approval of the Secretary of the Interior, governing future membership including adoptions and loss of membership."

It was undisputed that appellant's mother, Mrs. Ruth L., was born in 1933, appeared on the census roll of the tribe dated January 1, 1942, and was an enrolled member of the tribe. It was also undisputed that appellant was born in 1954 and has one-half degree Indian blood. Here agreement ended.

Appellant argued that she was a member of the tribe under article II, section 1, subdivision (c), since she was born to an enrolled member after 1942 and has one-half degree Indian blood. This conclusion would be irrefutable if one did not read past subdivision (c). However, the department argued that when article II is considered in its entirety, it is apparent that subdivisions (a) through (c) define who is eligible for membership, and that membership does not automatically follow from eligibility. In other words, appellant might qualify for membership under subdivision (c), but she could not be accepted as a member if she was enrolled in another tribe (subd. (d)) or if her enrollment was not approved by the governing body of the tribe and by the Secretary of the Interior (subd. (e)). Also, section 2 of article II might be invoked to deprive appellant of tribal membership.

The department's reading of article II apparently comports with that of the Bureau of Indian Affairs, which informed appellant's counsel that appellant was "eligible to make application for tribe membership . . . ."

The trial court agreed with the department's position and found that the Act was inapplicable, in that the minor was not an " 'Indian child' " because neither he nor appellant was an *enrolled* member of the tribe.

The statutory definition of Indian child, taken together with the Nooksack constitutional provisions, resulted in an ambiguity which was not easily resolved. (See Barsh, *supra,* at pp. 1307-1310.) This difficulty was compounded by the parties' and the trial court's focus on whether appellant (and the minor) were "enrolled."

"Enrollment is not always required in order to be a member of a tribe. Some tribes do not have written rolls. Others have rolls that list only persons that were members as of a certain date. Enrollment is the common evidentiary means of establishing Indian status, but it is not the only means nor is it necessarily determinative. *United States* v. *Broncheau,* 597 F.2d 1260, 1263 (9th Cir. 1979)." (Guidelines, *supra,* at p. 67586.)

Although it is apparent from the provisions of article II that the Nooksack Tribe uses an enrollment procedure, it is not clear whether the tribe would have found appellant to be a member had it been given the opportunity to rule on the question.

Since we cannot say as a matter of law that the minor is not an " 'Indian child' " within the meaning of the Act, the trial court's error in failing to inform the tribe of the proceedings cannot be deemed nonprejudicial error, and the judgment must be reversed.

We note that the trial court predicated its decision not to apply the Act in part on its determination that the minor had developed no identification as an Indian. The language of the Act contains no such exception to its applicability, and we do not deem it appropriate to create one judicially. (See *A.B.M.* v. *M.H.* (Alaska 1982) 651 P.2d 1170, 1173.)

Even if judicial creation of exceptions to the Act were permissible, creation of one where the child has been deprived of development of an Indian identity would not be appropriate. Congress has found that it has a responsibility to protect and preserve the Indian tribes and their resources and "that there is no resource that is more vital to the continued existence and integrity of Indian tribes than their children . . . ." (§ 1901, subds. (2), (3).) It has therefore established a policy of attempting to place Indian children in ". . . homes which will reflect the unique values of Indian culture, . . ." (§ 1902.) Thus a major purpose of the Act would be undermined by such an exception.

### V. POSTJUDGMENT CIRCUMSTANCES

After briefing was completed in this appeal, we received communication from the department's counsel and from the Nooksack Indian Tribe tending

to indicate that resolution of the minor's situation might be reached by settlement and that reversal for further proceedings might be avoided. In light of the undisputed evidence in the record before us that the minor already has suffered physical and psychological ill effects as a result of his unsettled status, we deemed it appropriate that we take subsequent developments into account. (*In re Elise K.* (1982) 33 Cal.3d 138, 139-151 [187 Cal.Rptr. 483, 654 p. 2d 253] (conc. opn. of Bird, C. J.).)[9]

In a letter dated January 12, 1983, Jennifer Clarke, Nooksack mental health and child welfare specialist, informed the department's counsel that, in light of certain facts, it appeared to the tribe that the minor's best interests would be served if he remained permanently with his foster mother. Accordingly, the tribe had decided not to intervene in the case. Counsel forwarded the letter to us and stated that although the department still believed that notice to the tribe was not required, "It would be wrong to elevate form over substance in this instance, to the detriment of the child's welfare."

We informed appellant's attorney of this development and suggested to him and to the city attorney that possibly the appeal was moot or that settlement could be reached. Counsel could not agree to terms, however.

On May 6, 1983, we received another letter from Ms. Clarke, clarifying the tribe's position. The tribe's stance, based upon a clearer understanding of the facts, now is that its nonintervention is conditioned on the parties attempting to reach a settlement by which appellant is assured visitation with the minor even after adoption by his foster mother. ". . . [I]f a voluntary settlement of this dispute cannot be reached, the Tribe may still find it necessary to intervene in order to protect this child's tribal and family connections."

In light of these developments, it now appears that resolution outside the normal course of events of the judicial process is not possible.

## VI. Conclusion

The trial court erred in failing to inform the Nooksack Indian Tribe of the pending action. Upon remand, the court shall refer to the tribe the questions whether, on or before December 30, 1981, under the laws of the

---

[9]The minor's trial counsel, Legal Services for Children, Inc., took us to task, stating that we should not receive or consider the tribe's suggestions until the legal issue on appeal was resolved. We appreciate the legal niceties of their position but suggest that anyone concerned with the welfare and legal rights of children would be well-advised to read and assimilate Chief Justice Bird's concurring opinion in *Elise K., supra,* 33 Cal.3d at pages 139-151.

tribe, (1) appellant was a member of the tribe, and (2) the minor was a member of the tribe or was eligible for membership. If the tribe informs the court, on or before 90 days after our decision becomes final, that on or before December 30, 1981, *either* (1) the minor was a member of the tribe, or (2) the minor was eligible for membership *and* appellant was a member, the court shall rule that the minor is an Indian child and that the Act is applicable to the action. The court shall then proceed in accordance with the Act's provisions, including the requirement of application of the standard of proof beyond a reasonable doubt. (§ 1912, subd. (f);[10] Barsh, *supra,* at p. 1319.) If the tribe informs the trial court, on or before 90 days after our decision becomes final, that on or before December 30, 1981, (1) the minor was not a member of the tribe *and* (2) the minor was not eligible for membership *or* appellant was not a member of the tribe, or if the tribe does not respond to the court's inquiry on or before 90 days after our decision becomes final, the court shall rule that the minor is not an Indian child and shall order that the judgment entered on December 30, 1981, is in full force and effect.

The judgment is reversed, and the cause is remanded for further proceedings in accordance with the views expressed herein.

Scott, Acting P. J., and Feinberg, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 27, 1983. Mosk, J., and Kaus, J., were of the opinion that the petition should be granted.

---

[10]Section 1912, subdivision (f), provides: "(f) *Parental rights termination orders; evidence; determination of damage to child* [¶] No termination of parental rights may be ordered in such proceeding in the absence of a determination, supported by evidence beyond a reasonable doubt, including testimony of qualified expert witnesses, that the continued custody of the child by the parent or Indian custodian is likely to result in serious emotional or physical damage to the child."